### CHARLES D. FOSTER & others *vs.* THERON ROCKWELL.

A manufacturer in the interior of Massachusetts gave an order to brokers in Boston: "Send me twenty-five bags saltpetre at your earliest convenience." The order could not be filled in Boston at that time, and the brokers bought the saltpetre in New York, directed it to be delivered there to a common carrier for transportation, consigned to themselves to a town near the factory, and advised their employer of what they had done, by a letter to which he made no reply. They had bought like merchandise for him before, on similar orders, but always in Boston, and had forwarded it to him from Boston. But the merchant from whom they bought this saltpetre had no knowledge of this course of dealing. He delivered it to the carrier, as he was directed; and it was lost in course of transportation. On being advised of the loss, the manufacturer denied the brokers' authority to make the purchase in New York. *Held*, that the merchant might recover from the manufacturer the price of the saltpetre.

CONTRACT for the price of twenty-five bags of nitrate of soda, as goods sold and delivered to the defendant; submitted to the judgment of the court on facts agreed substantially as follows, "the court to draw all such inferences as a jury would be authorized to draw."

The plaintiffs were merchants in Boston; the defendant a manufacturer of gunpowder in Southwick. On October 19,

1868, the defendant wrote to the firm of Cushing, Porter & Cades, merchandise brokers in Boston, the following order: " You will please send me twenty-five bags nitrate of soda at your earliest convenience." This firm had, from time to time, for seven or eight years previously, as brokers, and for a commission, bought for the defendant nitrate of soda and other materials for manufacturing gunpowder; on each occasion the order for the purchase was substantially like the one quoted; and every such purchase was made in Boston, and the goods were forwarded to the defendant from Boston by the Boston & Albany and Canal Railroads. At the time of this order of October 19, 1868, so small a quantity of nitrate of soda as twenty-five bags could not be bought in Boston. On October 20, Porter, one of the firm of brokers, applied to the plaintiffs, to make such a purchase of them, and was informed that they had no nitrate of soda in Boston, but had some in New York. He told them that he would take it in New York, at the price sued for, and directed them to mark the bags T, and ship them from New York by propeller to New Haven, to be forwarded thence to Westfield, and there to be delivered to the order of his firm ; and he wrote a letter to the defendant on the same day, which was mailed to the defendant the next day, as follows: " We have yours of the 19th. Nitrate here is very scarce and held at 5c. gold; and we should have to wait its arrival from New York, so we bought for you twenty-five bags at 4⅞c. gold, bag, &c., 35c. currency in New York, to be shipped *via* New Haven, marked T, and consigned to us, the carting and expense from New York not to be any more than from Boston. The carting here is 12c., and, as you know the freight to Westfield from here, you can easily tell whether it is cheaper or dearer than from New York. If it is any more from New York, you will deduct the difference when you remit." To this letter the defendant made no reply.

The plaintiffs directed their servant in New York to mark and ship the merchandise as directed by Porter, and it was marked " T, Westfield, Mass.," and shipped on board of the propeller Northampton, bound from New York for New Haven

on October 22, and the plaintiffs' servant took from the clerk of the propeller a receipt for it as deliverable to Cushing, Porter & Cades. This receipt he forwarded to the plaintiffs in Boston, who gave it to Cushing, Porter & Cades, but they did not send it to the defendant.

The propeller Northampton, with her cargo, including this merchandise, was sunk, by a collision, in Long Island Sound, on the night of October 22–23, on her passage to New Haven, and the merchandise was lost. On October 26, Cushing, Porter & Cades wrote to the defendant, stating that from the bill of lading in the hands of these plaintiffs they had " reason to think that the nitrate of soda bought of them for you was on board the propeller Northampton, which has sunk in Long Island Sound, and hope you took the precaution to have it insured ; " and on October 27 they mailed to him the plaintiffs' bill against him for the price of the merchandise. On October 29 the defendant replied, acknowledging the receipt of their letter of the 26th, quoting its language, and adding : " I am surprised that you should have bought nitrate for me in New York without instructions to do so, and I do not see how you could expect me to insure your property without requesting me to do so." Cushing, Porter & Cades answered on October 31, expressing surprise at the contents of the defendant's letter, and stating : " You have several times told us that you would at any time as lief take nitrate in New York as in Boston, one eighth less in New York, as the expense was about the same, and your instructions to buy did not say buy in Boston, and as we were acting for you we wanted to buy as cheap as possible, and supposed we were doing the right thing for you in saving you one eighth by taking in New York, and expenses to be no more. We gave you immediate notice, and of our action, which you received some days before the nitrate could be shipped, and we had no doubt you would provide for insurance. To accommodate the seller, we had it consigned to us, as it had to be consigned to somebody and we did not wish parties in New York to know to whom it was going." On December 26 they wrote to the defendant again, giving him the address in New Haven

of an agent of the steamship company which owned the pro-
peller, and adding: " We have a letter from this agent, that
they are settling the bills against the company by giving their
notes at one year from January 1. We have sent him duplicate
of your invoice and informed him that the nitrate was yours.
If you choose to settle on the terms proposed, you can write to.
him in regard to it." Neither party to the transaction ever made
any claim on the steamship company ; and the merchandise was
not insured by any one.

It was further agreed, if testimony of the facts would be com-
petent, that, at the time of making the purcnase from the plain-
tiffs, Cushing, Porter & Cades made an entry of the transaction
on their own books as a purchase made for the defendant; and
that the plaintiffs also charged the merchandise to the defendant
on their books.

*H. C. Hutchins*, for the plaintiffs.

*M. B. Whitney*, for the defendant.

COLT, J. The only question in this case relates to the au
thority of the agents to bind their principal in the purchase of .
the property, the price of which is sued for. If they had author
ity, then the sale was completed by the delivery of the merchan-
dise in dispute to a common carrier in New York, and the risk
of its loss was upon the defendant.

The agents employed were merchandise brokers living in
Boston. On the 19th of October they received an order from
the defendant for a specified quantity of nitrate of soda, to be
sent at the earliest convenience, but without express limitation
as to price or place of purchase. These same agents had, for
several years, bought for the defendant materials for the manu-
facture of gunpowder, upon orders substantially like this. But
every previous purchase had been completed by the delivery of
the goods in Boston, whence they had been transported by rail-
road directly to the defendant. The state of the market was
such that it was found impossible to fill the order in question in
Boston, so as to have the goods sent from that city, and accord
ingly a contract of purchase was made with the plaintiffs in
Boston for the delivery of the property to a carrier in New York

Foster *v.* Rockwell.

It is argued for the plaintiffs, that, in view of the increased facilities of modern times in the transaction of business between Boston and New York, and the fact that many merchants keep stocks of goods and maintain agencies or branch houses in both cities, there would be no abuse or excess of authority, as between principal and agent, in a purchase like this, under a peremptory and unlimited order, which from the state of the market it was otherwise impossible to fill at Boston; and that under such circumstances the previous course of dealing would not operate to place a limit upon the agents' power. It is not necessary to come to such a decision in this case, because the plaintiffs must have the benefit of that more liberal rule which applies to third parties dealing with an agent in good faith, and who may charge the principal for every act done within the scope of the authority with which the agent has been apparently clothed. The merchandise brokers in this case, though not the general agents of the defendant, were, by the order given, made agents for a particular purchase, with a general authority in regard to that transaction, not limited to any particular mode of doing the business. The plaintiffs had no notice of the previous course of dealing between the defendant and his agents, and are not affected by any implied limitation therefrom. Story on Agency, §§ 73, 127, 443. The defendant must be held to be bound by the contract of purchase made with the plaintiffs, on this ground alone.

There is another view of the case which is equally decisive in favor of the plaintiffs. On the 21st of October, a letter was mailed by these agents to the defendant, giving him definite information of the purchase and shipment, with all the particulars of the transaction. No reply was made to this letter; and the first expression of disapprobation on his part is contained in a letter to the agents dated the 29th of October in reply to one of the 26th, containing a suggestion that the property had been lost in Long Island Sound. We think there is sufficient evidence, in this conduct of the defendant, that he intended the original authority to cover the act, or that he then ratified and affirmed it.

The duty of the principal at once to disaffirm an act done by another in his name, or on his account, when brought to his knowledge, is more imperative when the unauthorized act is the act of an agent, done in the execution of a power conferred, in a mode not sanctioned by its terms. Implied ratification from mere silence more readily arises when the act is in misuse or excess of authority given. In such cases, the principal has no right to delay, if he intends in any contingency to repudiate the conduct of his agent. He cannot lie by, and seize the benefit of it if profitable, or renounce it if otherwise, at his election. The defendant's silence on the receipt of the letter in this case cannot be accounted for on any other theory than that of his approval of the purchase. It is of no consequence that the letter did not give the information requisite to enable him to obtain insurance, or that it was not probably received until after the loss. The question is not affected by the fact that by the loss the plaintiffs' relation to the goods was changed, and their power to repossess them gone, before the defendant could have had time to disaffirm. If the transaction, when brought to his knowledge, was not seasonably disapproved, it is enough, and a ratification must be presumed, with all the consequences which follow, one of which is that the property vested in him, before its loss, by delivery to the carrier. 2 Kent Com. (6th ed.) 616 Story on Agency, § 258. *Brigham* v. *Peters*, 1 Gray, 147 *Thayer* v. *White*, 12 Met. 343.

A majority of the court are of opinion that, upon this statement of facts, with such inferences therefrom as a jury might properly draw, the plaintiffs are entitled to recover.

*Judgment for the plaintiffs.*