JACOB F. BROWN & another *vs.* WILLIAM S. HENRY
& another.

Suffolk. January 13, 1899. — March 1, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Principal and Agent — Unauthorized Contract — Repudiation —
Ratification — Estoppel.*

If a principal, upon learning of an unauthorized contract of his agent, repudiates it, giving an unfounded reason for so doing, such repudiation is not equivalent to a ratification of the contract, in the absence of anything beyond this to work an estoppel.

CONTRACT, against William S. Henry and Charles C. Parsons, copartners as Henry and Parsons, to recover damages for the refusal to deliver about 25,000 pounds of Alabama wool alleged to have been sold to the plaintiffs by one Salter, a broker. Trial in the Superior Court, before *Braley,* J., who allowed a bill of exceptions, in substance as follows.

Richard J. Salter testified that he was a member of the firm of Salter Brothers, wool brokers, and had been a wool broker in Boston about four years, and prior thereto in New York and St. Louis; that he knew the defendants had about 25,000 pounds of Alabama wool for sale, they having purchased it through him some months before; that on Saturday, January 23, 1897, after an interview with the plaintiff Brown at Brown's request, he had an interview with the defendant Parsons, who authorized him to offer the wool at $16\frac{1}{2}$ cents, and gave him a written order on which he secured a sample of the wool; that he called upon the plaintiff Brown, who told him that he would "take it at $16\frac{1}{2}$ cents, 60 days"; that he came back to the office of the defendants, which was also his own office, he having a part of their office, expecting to find Parsons there, but Parsons had left; and that he sat down and wrote a "bought note," of which the following is a copy:

"Boston, January 23, 1897. Brown & Adams, City. Gentlemen: We beg to advise having bought for your account to-day, of Messrs. Henry & Parsons, about 25,000 lbs. Ala. wool, stored

in the Fort Hill storage warehouse, at $16\frac{1}{2}$ c. per pound. Terms 60 days. The wool to be paid for within 60 days, and interest allowed for the unexpired time. Buyers to have the benefit of unexpired storage and fire insurance, and to assume charges therefor. Sacks at value. Tare three pounds per sack. Respy., Salter Brothers, Brokers."

He further testified that he gave to the defendants a "sold note" similar in its tenor to the "bought note"; that there was a custom in the wool trade by which, if nothing is said to the contrary, the term of credit is sixty days; that there was a custom in Boston to allow for foreign substances in wool tare three pounds, and for purchasers to take sacks containing the wool at value; that there was also a custom in Boston to allow the benefit of unexpired storage and unexpired fire insurance on wool, when nothing is said about it in the terms of the trade, if the buyer does not want to move the wool; and that this allowance extends to the end of the month within which it is bought.

The witness further testified that he immediately left for St. Louis, and there received a telegram from the defendants, dated January 28, as follows: "Sale note not accepted, Parsons gave no definite sale price"; — that, upon information received by him from New York before the receipt of the above telegram, he telegraphed the defendants as follows: "What is wrong about Georgia sale? The price was given me by Mister Parsons, and wool sold in good faith"; — and that he also telegraphed the defendants on the same day as follows: "If Mr. Parsons reflects, he will sustain my sale so far as price is concerned."

On cross-examination, the witness testified that the supply of Georgia and Alabama wool in the Boston market was limited at this season of the year; that the plaintiffs and the defendants were, in a sense, rivals on those wools in this market; that this lot of 25,000 pounds was practically all of the Southern wool at that time in this market offered for sale which was not owned by the plaintiffs; that the lot of wool had been withdrawn from the market by the defendants within a week of January 23; that he did not write out the "bought note" to the plaintiffs when they agreed to pay $16\frac{1}{2}$ cents, but after he had returned and found Parsons absent; that he went back to the defendants to say that he had closed the wool, that they might know the

wool was sold and not market it again; that it was the practice, after he had had a price given him on wool, and had gone to a man who would buy at the price, to go back to the seller and notify him what he had done, to tell him the price and terms he had sold on, and for confirmation of the sale; that he had not had a word with either of the defendants as to sixty days; that the plaintiff Brown wanted it on sixty days, and he went back to ask the defendants to say·how Brown should buy it, never dreaming that there would be any objection; that they had a right to say whether they had any objections; that the time was between twelve and one o'clock, and he was going to St. Louis at three o'clock; and that he fixed the terms himself, because there was nothing said about terms on the part of the defendants, and if they had said they wanted net cash, he would have insisted on that.

Jacob F. Brown, one of the plaintiffs, testified that he was a member of the firm of Brown and Adams, wool dealers in Boston, dealing very extensively in Southern wool; that in January, 1893, his firm held practically all of that wool in the Northern market; that there was no other on the market offered for sale except the lot in suit; that he received a "bought note" from Salter on the afternoon of Saturday; that on Monday afternoon, after four o'clock, he sent a messenger to the defendants to get an order for some of the wool for the following morning, and the messenger did not get it; that Tuesday morning he went up to see Parsons, and had an interview with him about noon; that there is a custom in the wool trade in Boston that sacks be taken at value and tare, three pounds per sack for foreign substance; that where nothing is said as to the terms of credit, the credit is sixty days; that there is a custom in the trade in Boston, where nothing is said with reference to unexpired storage and insurance, that the buyer has the benefit of the unexpired storage and insurance for the current month; that at the interview with Parsons on Tuesday, Parsons said that Salter had no authority to sell the wool at $16\frac{1}{2}$ cents, that the plaintiffs could not have the wool, and that he did not propose to have Salter run his business; that no other objection to the authority of Salter was made than that he was not authorized to sell at that price; that he did not think Parsons said anything with refer-

ence to the other terms of the sale; that he told Parsons he had himself already sold the wool to one of his customers; that there was no further interview with Parsons; that his firm is and was at that time in good financial standing; and that about February 4, Henry, who had been ill and away from the office, called upon him and said he regretted that the trouble had arisen between Salter and Parsons about the giving of the price of $16\frac{1}{2}$ cents, and did not object to any of the other terms of the contract, except the price, or question the credit of the plaintiff's house.

It appeared that between January 26 and February 11 there was considerable correspondence between the parties, in which the plaintiffs insisted upon the contract of sale being carried out, and the defendants denied Salter's authority to make the sale.

On cross-examination, the witness said that he bought the wool a cent a pound below the market of Saturday; that where a broker is given a price on a lot of wool, and finds a customer at that price, the seller has no further control of the sale if the buyer is responsible; that if he is irresponsible, the seller can repudiate the sale; and that he knew at half past four o'clock on Monday, January 25, when he sent for certain bags of wool, that he did not receive them, and this was the first knowledge he had that the defendants would refuse to deliver the wool.

It appeared from the defendants' testimony that the defendant Henry was at home ill on January 23, and remained there for some days thereafter; that the first knowledge of the alleged sale to the plaintiffs which either partner had was from receiving the "sold note," which was seen by Henry at his house on Sunday about noon, but not seen by Parsons until he arrived at the office on Monday morning.

The defendant Parsons denied having given Salter authority to sell the wool at $16\frac{1}{2}$ cents. Both the defendants and other witnesses familiar with the wool trade testified that there was no custom in the trade by which, where no terms were given to a broker, the sale was understood to be upon sixty days, or by which a customer had the right of payment within sixty days less interest, or by which a buyer had the benefit of unexpired storage and insurance, or by which unexpired storage and in-

surance meant the unexpired balance of the current month. The defendant Parsons testified, on cross-examination, that at an interview with his partner on Saturday night at his house he told Henry of his talk with Salter; that Henry did not approve the sale at $16\frac{1}{2}$ cents; that they there decided that they would not sell the wool at that price; that it was Tuesday morning before he notified the plaintiffs finally that he was not going to sell the wool at $16\frac{1}{2}$ cents; and that he did not notify them before, because he wanted to talk it over with Henry before deciding.

The defendants asked the judge to rule, among other things, as follows: " 1. On this evidence the defendants are entitled to a verdict. 2. Salter Brothers had no authority to bind the defendants to ' Terms 60 days.' 3. There is no evidence that the defendants waived any right to object to ' Terms 60 days,' or ratified Salter's action in inserting that clause. 4. There is no evidence that the defendants waived any right to object to the provision, ' Buyers to have the benefit of unexpired . . . fire insurance,' or ratified Salter's action in inserting that clause."

The judge declined to give these rulings, and instructed the jury, among other things, as follows:

" If you are satisfied that the burden of proof has been sustained, and that Salter did have authority to sell this wool at $16\frac{1}{2}$ cents a pound, and the authority was given him by Parsons, of the firm of Henry and Parsons, then there remains a further issue for your consideration. I instruct you that, as matter of law, such authority, if given by Parsons to Salter, and nothing further appearing in the case, it is a cash sale; as soon as perfected and delivery is made, the buyers would be called upon to pay cash to the seller, but upon examination of the memorandum of sale, the contract of sale, it appears that there are other terms besides the price per pound and quantity, and you can read the terms through. Something is said about the terms of payment, and also as to the buyers having the benefit of unexpired storage and fire insurance, and to assume charges thereafter, ' sack at value.' . . .

" The plaintiffs go forward and say that, notwithstanding that is so, yet by a usage or a custom known to the wool trade, and obtaining in the city of Boston, when Salter had authority from

Parsons to sell this wool at the price per pound, he also had authority upon making that sale to add to it the other terms, or, in other words, that there is a custom and usage in the wool trade in Boston which gave that authority.   It becomes, therefore, necessary for the court to instruct you upon this branch of the case, and I do instruct you, that a custom within the meaning of the law, if a general custom, is incorporated into and becomes a part of every contract to which it is applicable; if local, by the very contract made, the parties having knowledge of or bound to know its existence; it must be certain, definite, precise, and unvarying. . . .

   " But the plaintiffs go further, and say that in this case, if you should find that there was no such usage or custom that it could be fairly said to have formed a part of the contract between the parties, yet they are entitled to have you consider a further issue in this case, and that is that notwithstanding, if it be a fact, that if Salter had authority from the defendants only to sell so much wool at so much per pound, which would be a cash sale, yet having sold it under terms and conditions which are expressed in this contract, which contains very much more than the sale of so much wool at so much per pound, the defendants, when they knew that it had been so done, instead of repudiating, instead of saying that they were not bound by any such contract as that by reason of the addition of these various things to which I have called your attention, chose to base their refusal to perform upon the one objection that Salter never had any authority to sell the wool at 16½ cents per pound, and that having so done it is not now open to them to come here and say that they rely upon want of authority in Salter to add the other terms which appear in the contract thereto.

   " The doctrines of waiver and estoppel, and of ratification, rest upon distinct legal conceptions, and in this case the plaintiffs put their right upon this aspect of the evidence upon ratification; and I instruct you that if you find upon the evidence in this case, after the making of this contract by Salter, acting as agent for Henry and Parsons, that contract was brought to the knowledge of the defendants, or either of them, and they accepted (and such acceptance might be by the act of both, or by the act of one of the partners) the act of Salter, and adopted

that act and made it their own, then in law it is the same
as though the defendants, on the 23d of January, 1897, had
themselves signed that memorandum, signed that contract, and
delivered it to the plaintiffs; and you may proceed as though
on that day the minds of the parties, that is, the plaintiffs and
the defendants in this case, met, and the memorandum was
made which was incorporated into that paper, called here ' the
contract of sale,' and delivered by the defendants to the plain-
tiffs. But before you apply that, it will be necessary for you
to look at the evidence to ascertain whether or not, fairly
weighed, it is enough to satisfy you that the defendants did so
assent. . . .

" Now, at that time, when the discussion first began as to
whether or not the contract should be performed, and when
Parsons and Henry, one or both, began to talk with the plain-
tiffs, one or both, or wrote letters or sent telegrams, what did
Henry and Parsons, one or both, know of the terms of the al-
leged contract which the plaintiffs claim bind the defendants?
Did they know all the terms of it, and, having a duplicate be-
fore them and being able to read it, could they have known
all the terms of it as well as the clause which related to the
price per pound? If they did have that knowledge of the terms
of that contract, and if the plaintiffs then asked the defendants
to perform and carry it out, and the defendants then gave their
reason for not performing, carrying it out, and the reason was
the price per pound and none other, and thereafter, and during
the writing of all these letters, during the sending of the tele-
grams and replies, and the personal interviews, they still said
that the only reason why they would not perform and did not
recognize the contract as binding upon them was the price per
pound, and nothing else, that is evidence for you to consider,
whether or not by so doing they did not give the plaintiffs to
understand that that was the only clause in that contract to
which they objected, and that as to all the other clauses or
terms of that contract they had nothing to say; or, in other
words, was their silence, coupled with their declarations, enough
to satisfy you, plus the other evidence to which I have called
your attention, that as to all the other terms of that contract,
with the exception as to the one as to price, they were satisfied

with what Salter had done, and if the price had been right they would have made no objection to any part of it? If so, then I instruct you that their conduct and their acts will be sufficient, with the instruction which I have given you, for you to find that they ratified and confirmed what Salter had done. But if, on the other hand, during all this matter of dispute and negotiation between the parties, the defendants in this case, though specifying only that the price per pound was the reason why they did not perform, was the reason why they did not confirm and recognize the act of Salter, at no time intended that the plaintiffs should understand that they waived or did not intend to rely upon objections to the other terms to the contract, or that by objecting to that one clause of it they had thereby objected to the whole, and did not think it was necessary to specify it, then and in that case there would not be ratification."

The jury returned a verdict for the plaintiffs, and, in answer to an inquiry by the judge, whether they found that there was such a custom in the wool trade as was claimed by the plaintiffs, replied " that they found that there was not such a custom." The defendants alleged exceptions.

*S. J. Elder*, (*E. A. Whitman* with him,) for the defendants.

*S. L. Whipple*, (*W. R. Sears* with him,) for the plaintiffs.

KNOWLTON, J. It appeared upon the undisputed evidence that the broker inserted in the written memorandum of sale certain provisions which were not expressly authorized by the defendants. The jury found that there was no custom under which he could bind the defendants by these agreements. He was not the defendants' general agent, and the terms of his authority to make a sale could be inquired into. He could bind the defendants only by such a contract as they authorized him to make. *Coddington* v. *Goddard*, 16 Gray, 436. *Remick* v. *Sandford*, 118 Mass. 102.

Under the instructions of the court and the finding above stated, the verdict for the plaintiffs must rest on a finding that the defendants ratified the broker's contract. The jury were allowed to find ratification on the ground that the plaintiffs were right and the defendants wrong in regard to the defendants' contention that the broker was not authorized to sell the wool at the price named in the contract, it appearing that the

defendants stated, as their reason for repudiating the contract, that the broker had no authority to sell the wool at that price, and failed to make any objection to the provisions of the contract about credit, the allowance of interest, unexpired storage, and fire insurance. These latter provisions were inserted in the contract by the agent without authority. There was no evidence that the situation of the plaintiffs was changed, or that their rights were in any way affected by reason of the form of the defendants' objection and disavowal.

Where something is to be done by one of two parties as a condition precedent to his exercise of a right against the other, the other may waive the performance either wholly or in part. If there is an attempt at performance which falls short of the requirement, and if objection is made by the party for whom it is done, with a statement of the grounds of his objection, the objector often is held to have waived his right afterwards to object on other grounds, when the other has gone forward relying upon the implied representation that the performance is satisfactory in other particulars. *Clark* v. *New England Ins. Co.* 6 Cush. 342. *Searle* v. *Dwelling House Ins. Co.* 152 Mass. 263. *Curtis* v. *Aspinwall*, 114 Mass. 187. *Knickerbocker Ins. Co.* v. *Norton*, 96 U. S. 234. *Titus* v. *Glens Falls Ins. Co.* 81 N. Y. 410. These cases rest upon the ground that, when one is stating objections, a failure to disclose a ground of objection in a particular which easily could be remedied tends to mislead the other party to his detriment, and is so contrary to justice and good morals as to work an estoppel against doing it afterwards.

No such principle is applicable to the present case. We have an unauthorized contract made by an agent. The plaintiffs had no rights under it immediately after it was made. They have no rights under it now unless the defendants ratified it. "Ratification of a past and completed transaction, into which an agent has entered without authority, is a purely voluntary act on the part of a principal. No legal obligation rests upon him to sanction or adopt it." *Combs* v. *Scott*, 12 Allen, 493, 497. *Greenfield Bank* v. *Crafts*, 2 Allen, 269. If, however, one is acting in the execution of a general power, but in a mode not sanctioned by its terms, and if any benefit comes to the principal from the act, ratification may be implied pretty quickly from lapse of

time with knowledge of the circumstances. *Foster* v. *Rockwell*, 104 Mass. 167. The evidence is undisputed that, within a reasonable time after being informed of the contract, the defendants in the present case repudiated it. The naked question is presented whether, if a principal, on learning of an unauthorized contract of an agent, repudiates it, giving a reason for so doing which proves to be without foundation, such repudiation is equivalent to an adoption of it. In the absence of anything beyond this to work an estoppel, we are of opinion that it is not. Ordinarily, ratification of an agent's act is a mere matter of intention. In the present case the defendants, as soon as the facts were ascertained, manifested in the clearest manner their intention not to ratify, and their subsequent conduct has all been consistent with their original repudiation of the attempted sale. They could not repudiate it in part and adopt it in part. 1 Am. & Eng. Encyc. of Law, (2d ed.) 1192, and cases cited. There is a class of cases in which the principal receives a direct benefit from an act of an agent, and it is held that, if he retains this benefit for a considerable time after he obtains full knowledge of the transaction, he thereby ratifies the act. *Brigham* v. *Peters*, 1 Gray, 139. *Sartwell* v. *Frost*, 122 Mass. 184. *Coolidge* v. *Smith*, 129 Mass. 554. Here, too, there is an element of estoppel which does not exist in the case at bar. One cannot have the benefit of an unauthorized act of an agent without confirming it. Ordinarily, a principal is not called upon to give reasons for declining to be bound by an act undertaken without authority. The controlling reason is that it was unauthorized. The particulars in which it lacks authority usually are of no importance. If the other party relies upon it, he has the burden of showing ratification. If the principal insists that it is unauthorized, and does nothing and says nothing which warrants the other party in treating it as ratified, the mere fact that he is incorrect in his statement of the particulars of the want of authority does not change his repudiation of the act into an adoption of it. We are of opinion that the instructions in regard to ratification were erroneous, and that the jury should have been instructed that there was no evidence that the defendants ratified the contract declared on. See *Price* v. *Moore*, 158 Mass. 524.

*Exceptions sustained.*