## A. BLUM JR.'S SONS *vs.* J. REED WHIPPLE & others.

Suffolk.     January 7, 1907. — February 27, 1907.

Present : KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

### Agency.   Laches.

A person who takes from a special agent a check payable to his principal and indorsed by the agent is bound to inquire and ascertain whether the agent had authority to make such indorsement.

If a travelling salesman employed by a corporation as a special agent to make sales of wines and liquors, without authority to indorse checks payable to the corporation, indorses and negotiates such a check and embezzles the proceeds, the

corporation can recover for the conversion of the check from the person who cashed it and caused it to be collected.

If a special agent without authority to indorse checks payable to his principal indorses and negotiates such a check and embezzles the proceeds, and thereupon absconds and the principal as soon as he learns of the transaction institutes criminal proceedings against the agent, who never is found, and if more than two years later the principal for the first time informs the person who cashed the check of its wrongful indorsement, demands from him the amount of the check, and upon refusal brings an action for its conversion, the delay of the plaintiff, which has not injured the defendant, does not as matter of law constitute a ratification of the act of the agent in indorsing the check, nor does it show such negligence or laches as to preclude the plaintiff's recovery.

CONTRACT OR TORT, for the sum of $132.92, with counts for money had and received and for the conversion of two checks. Writ in the Municipal Court of the City of Boston dated December 28, 1903.

Copies of two checks were annexed to the declaration, one dated April 26, 1901, for $82.92 and the other dated April 29, 1901, for $50. Both were payable to A. Blum Jr.'s Sons, and both were indorsed "Montrose K. Newman for A. Blum Jr.'s Sons" and "Pay to the order of the Metropolitan National Bank of Boston, J. R. Whipple & Co."

The answer contained a general denial, and alleged ratification of the indorsements of Newman by the plaintiff.

On appeal to the Superior Court the case was submitted to *Fox,* J., without a jury, upon an agreed statement of facts. The plaintiff relied solely upon its counts in tort for the conversion of the checks.

The agreed facts were as follows:

The plaintiff was a corporation doing business in the city of New York as a wholesale dealer in wines and liquors, and the defendants were the proprietors and managers of a hotel in Boston known as the Parker House. The plaintiff employed as a travelling salesman one Montrose K. Newman. While in Boston, between January 25, 1901, and May 4, 1901, Newman transmitted several orders from Boston to New York, among which were some bogus orders. He also collected during this period cash and checks from the customers from whom he had received the orders, and never transmitted either the cash or the checks to the plaintiff. Knowledge of these transactions first came to the plaintiff in May, 1901.

In April, 1901, the Locke-Ober Company, doing business in Boston, was indebted to the plaintiff in the sum of $82.92, and Newman called upon this debtor and received, in satisfaction of the claim, a check for that amount payable to the order of the plaintiff. Newman requested the defendants to cash this check and indorsed it, " Montrose K. Newman for A. Blum Jr.'s Sons," and thereupon the defendants paid to Newman the face amount of the check, after deducting such sum as was due to the defendants from Newman for board and lodging. The defendants deposited the check to their own credit in the Metropolitan National Bank, and the check was paid by the bank upon which it was drawn. Newman had no authority to indorse the plaintiff's name to any checks or other instruments. Some time in the latter part of May, 1901, the plaintiff first was advised of the fact of the delivery of this check to Newman and of the manner in which it was cashed by the defendants. The plaintiff immediately consulted the district attorney for the county of Suffolk. It was agreed, if competent, that an indictment was returned by the grand jury for that county, at its next sitting, against Newman, on a charge arising out of this and like transactions, and that Newman was never apprehended and never has been located since that time, except that there was a rumor that he was in the Philippine Islands. No notice of the want of authority on the part of Newman to indorse this check was given by the plaintiff to the defendants until on or about October 15, 1903, at which time the check was placed in the hands of counsel for collection.

In April, 1901, one M. C. Page of Boston was indebted to the plaintiff in the sum of $50, and Newman obtained in payment of the claim a check for that amount payable to the order of the plaintiff. Newman indorsed this check in the same form as above stated, and received the money thereon from the defendants, and the defendants deposited the check to their credit in the Metropolitan National Bank, and it was paid by the bank upon which it was drawn. Newman had no authority to indorse the plaintiff's name to any checks or other instruments. Some time in the latter part of June, 1901, the plaintiff first was advised of the fact of the delivery of this check to Newman and of the manner in which it was cashed by the

defendants. The plaintiff immediately consulted the district attorney for the county of Suffolk. It is agreed, if competent, that an indictment was returned by the grand jury for that county at its next sitting, against Newman, on a charge arising out of this and like transactions as stated above. No notice of the want of authority on the part of said Newman to indorse this check was given by the plaintiff to the defendants until on or about October 15, 1903, at which time the check was placed in the hands of counsel for collection.

The plaintiff never has received payment of these checks from any one. No demand ever has been made upon or action brought against either bank by the plaintiff.

The defendants asked the judge to rule as follows:

1. That upon the agreed statement of facts the plaintiff is not entitled to recover.

2. That it is admitted by the agreed statement of facts that Newman was the plaintiff's agent, and was rightfully in possession of the checks in question, and that the defendants cashed these checks upon the indorsement of Newman as the plaintiff's agent on or about April 26 and 29, 1901; that the plaintiff discovered that the checks had been indorsed by its agent in May and June, 1901, and that the plaintiff did not notify the defendants with reference to the indorsements until October 15, 1903. In view of these facts it is clear that the plaintiff was guilty of laches and cannot recover.

3. That the plaintiff's silence for more than two years and three months warrants the court in finding that the plaintiff ratified the acts of its agent, and therefore the plaintiff cannot recover in any form of action against these defendants.

The judge refused to make any of the rulings requested, and found for the plaintiff in the full amount of the checks with interest. The defendants alleged exceptions.

*J. Gordon,* for the defendants.

*A. K. Cohen,* for the plaintiff.

SHELDON, J. As Newman was employed by the plaintiff corporation merely as a travelling salesman, with no authority to indorse the plaintiff's name upon any checks or other instruments, and as he never was held out by the plaintiff as having any such authority, there is no doubt of the plaintiff's right of

recovery in this action unless it has lost this right by its long silence after its discovery of Newman's wrongful acts. *Robinson* v. *Chemical National Bank*, 86 N. Y. 404. *Buckley* v. *Second National Bank*, 6 Vroom, 400. *Graham* v. *United States Savings Institution*, 46 Mo. 186. He was only a special agent of the plaintiff, with limited authority; and the defendants before taking the checks upon his indorsement were bound to inquire and ascertain the nature and extent of his authority. *Lovett, Hart & Phipps Co.* v. *Sullivan*, 189 Mass. 535, 536, and cases there cited.

But the defendants contend that the plaintiff, having allowed more than two years to elapse after learning of Newman's wrongful acts and before it gave any notice to the defendants or made any claim upon them, was guilty of laches and now must be taken to have ratified the acts of its agent Newman. They quote the language of Colt, J. in *Harrod* v. *McDaniels*, 126 Mass. 413, 415: "It is a rule in the law of agency, that when the unauthorized act of the agent is done in the execution of a power conferred, in a mode not sanctioned by its terms, and in excess or misuse of the authority given, ratification by the principal is more readily implied from slight acts of confirmation. The duty to disaffirm at once, on knowledge of the act, is said to be more imperative in such cases, because the confidence of the principal in the fitness and fidelity of the person he has selected as an agent is shown by the relations already established between them." But in that case there was evidence of ratification by the affirmative acts of the defendant. Nor were Newman's acts, as in some other cases cited by the defendants, done in the execution of a power conferred by the plaintiff, though in a mode not sanctioned by its terms, or merely in excess of the strict limitations put upon his authority. *Foster* v. *Rockwell*, 104 Mass. 167. *Brown* v. *Henry*, 172 Mass. 559, 567. Nor did the plaintiff receive any benefit from Newman's acts, as in *Brigham* v. *Peters*, 1 Gray, 139, nor was there any legal duty incumbent upon the plaintiff to give prompt notice of the facts and of its claims to the defendants; its delay could be nothing more than one of the circumstances to be weighed against it. *Greenfield Bank* v. *Crafts*, 2 Allen, 269. *Canal Bank* v. *Bank of Albany*, 1 Hill, 287. It could not have

been ruled as matter of law that the plaintiff had ratified Newman's acts in indorsing the checks to the defendants.

Nor was the plaintiff guilty of such negligence or laches as to take away its right of recovery. This question was considered under somewhat similar circumstances in the recent case of *Murphy* v. *Metropolitan National Bank*, 191 Mass. 159, 164, 165. Here, as in that case, it did not appear that any loss was caused to the defendants or that their position was in any way changed by the failure of the plaintiff to notify them earlier than it did. *Hamlin* v. *Sears*, 82 N. Y. 327. Indeed, it affirmatively appears that the plaintiff, as soon as it learned of these transactions, instituted criminal proceedings against Newman, but that he has never since been located, except that it was rumored that he was in the Philippine Islands; and these facts are competent to show that the defendants have not been injured by the plaintiff's failure to give them any earlier notice. And see the cases cited in *Murphy* v. *Metropolitan National Bank*, 191 Mass. 159.

The rule adopted in that case as between a bank and one of its depositors applies *a fortiori* in the case at bar.

It follows that the instructions requested by the defendants were rightly refused.

*Exceptions overruled.*