MARY L. McQUAID *vs.* ELIZABETH DELANEY & others.

Hampden.    September 22, 1932. — January 3, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Equity Jurisdiction*, Accounting by cotenant. *Agency*, Scope of authority, Ratification.

Subsidiary findings by a master in a suit in equity were that one, who managed certain real estate, excepting a hotel thereon, as agent for several persons who were owners of the real estate as tenants in common, inquired of one of the owners whether furniture in the hotel, belonging to a tenant thereof, should be purchased by the owners; that the owner so addressed replied by telegram and letter that he would not be a party to the purchase; that the agent made the purchase and sent a notice thereof to said owner, who made no reply; that later the agent became the agent of the owners for the hotel as well as for the other portions of the real estate and sent monthly statements to said owner, the first statement showing a credit to the agent for the purchase price of the furniture; and that said owner thereafter refused to take part in a discussion as to sale of the furniture and to sign a

bill of sale thereof, on the ground that he had no interest therein. *Held*, that such findings did not require, as a matter of law, a finding that said owner impliedly ratified the unauthorized act of the agent in purchasing the furniture; and a conclusion by the master that there was no such ratification must stand.

In a suit in equity for an accounting by the owner above mentioned against his cotenants, it appeared that one of the defendants, knowing of the plaintiff's attitude concerning the purchase of the furniture, instructed the agent to proceed with the purchase; that the purchase price was paid by the agent from a bank account standing in his name as such; that said defendant was not an agent of the plaintiff; and that the furniture was sold at a loss. *Held*, that

(1) A finding was warranted that said defendant assumed full responsibility, so far as the plaintiff was concerned, for the purchase of the furniture;

(2) It was proper to order that said defendant pay to the plaintiff a proportion of said loss equal to the proportion of the plaintiff's interest in the real estate, and to dismiss the bill as against the other defendants.

BILL IN EQUITY, filed in the Superior Court on June 21, 1928, and described in the opinion.

The suit was referred to a master, material findings by whom are stated in the opinion. By order of *Whiting*, J., there were entered an interlocutory decree confirming the master's report, and a final decree ordering the defendant O'Donnell to pay the plaintiff $924.35 and dismissing the bill as to the other defendants. The defendant O'Donnell appealed from both decrees.

*R. P. Stapleton*, for the defendant Terence B. O'Donnell.

*M. L. Welcker*, for the plaintiff, submitted a brief.

CROSBY, J.   In this suit in equity the plaintiff, a resident of New York, seeks an accounting of certain money in connection with the purchase, from funds owned by the plaintiff and the defendants as tenants in common, of certain furniture in a hotel in Holyoke in the county of Hampden. All the parties at the time of the filing of the bill and for several years prior thereto were the owners in common of the real estate, in the following proportions: the plaintiff five twelfths in fee; the defendant O'Donnell a life estate in five twelfths, with remainder over to his children in fee; the remaining six defendants, children of John L. Delaney, each owned one thirty-sixth in fee. The real estate was

occupied in part by stores and offices, and the remainder was used for a hotel.

The master made the following findings: In September or October, 1921, all the owners appointed one Orrell, as agent, who collected the rents and exercised general management of the property with the exception of the hotel, until February 28, 1928. From some time before September, 1926, the premises used for hotel purposes were rented to one Mullen who owned the furniture and the equipment used by him, and he paid his rent directly to the owners. Later in September, 1926, the owners prepared to evict him, and he advertised the furniture for sale at public auction on the premises on September 27. Notice of the sale was published in a newspaper and a copy mailed by Orrell to the plaintiff. On September 24 Orrell telegraphed to the plaintiff as follows: "Mullen vacating hotel. Furniture to be sold at auction Monday. Shall I buy so owners may rent furnished hotel or conduct same themselves." The plaintiff telegraphed by night letter to Orrell on September 26 as follows: "I will not be party to buying furniture." She confirmed this by letter of the same date, more fully expressing her opinion about the matter. The defendant O'Donnell had a conference with Orrell concerning the purchase of the furniture on September 24, and another conference on the following day at which the defendants O'Donnell and Elizabeth Delaney were present with Orrell. O'Donnell instructed Orrell to have an appraisal made of the furniture, and a price of $3,850 was reported to O'Donnell, who then directed that Mullen be notified that the owners of the real estate would pay that sum. Thereafter, and before the time set for the auction sale, Mullen executed a bill of sale to all of the owners of the real estate. After Orrell received the telegram from the plaintiff he read it to O'Donnell, who instructed him to proceed with the sale; this was done, Orrell paying for the furniture the sum of $3,850 from a savings account standing in his name as agent. On October 14 following, Orrell wrote a letter to the plaintiff respecting the purchase of the furniture; she did not reply to this letter. Thereafter Orrell continued to

act as agent for the owners until February, 1928, when he took general charge and conducted the hotel and the management of the rest of the property. He rendered monthly statements showing collections and expenditures, and a separate statement of the receipts and disbursements of the hotel. Copies were sent to and received by the plaintiff, the first one showing a credit to Orrell of $3,850 paid for the furniture. On March 3, 1927, Orrell wrote the plaintiff with reference to two prospective tenants for the hotel and a store in the building. The plaintiff, by letter dated March 13, replied, expressing her views and making several inquiries concerning the property; and stating: "I heartily agree with you that your burden at present with the property is a heavy one. A note to the bank is the logical solution, but no one can expect me to volunteer my aid, when the entire deplorable situation was entered into without my sanction or even knowledge." In February, 1928, Robert W. Delaney, one of the defendants, offered to rent the hotel for five years upon certain terms. The defendants O'Donnell, Elizabeth L. Delaney and the plaintiff conferred with him and a lease was prepared on February 16, 1928, and signed by all the owners. After the lease was agreed to there was a discussion over the sale, value and price of the furniture; "the plaintiff refused to take part in that discussion, stating that she had no interest in the furniture." Orrell ceased to act as agent for the owners and one Allyn was chosen in his place and began his duties on March 1, 1928. Shortly after his appointment negotiations in which the plaintiff took no part were completed for a sale of the furniture to Robert W. Delaney for $2,000, and on March 9, 1928, Allyn wrote the plaintiff for her opinion of the sale. The plaintiff replied by letter dated March 14, stating that she hoped to give a definite answer within a few days. On March 16, Allyn telegraphed and wrote her again asking for authority to sign a receipt "as agent for $2,000 cash for the furniture." On March 23 the plaintiff replied as follows: "I am herewith returning to you the Bill of Sale sent for my signature. You evidently are under the false impression that I have an interest in the furniture but Mr.

Orrell as my agent was advised both by letter and telegram that I would not be party to its purchase. Therefore never having assumed ownership of it, I have no right to sign a bill of sale . . . ." The sale to Delaney was made without the signature or assent of the plaintiff. After Allyn took charge of the property he sent monthly statements of all receipts and expenditures, which were received by the owners.

After the foregoing subsidiary findings of the master, his ultimate findings are in part as follows: "that the plaintiff, by telegram dated September 26, 1926, and received by Orrell the agent for all of the owners prior to the purchase of the furniture, refused to be a party to the buying of the furniture, but that Orrell under instructions from the defendant O'Donnell, proceeded with the purchase, using funds of the cotenants for that purpose . . . that the plaintiff did not at any time by any expressed act ratify the purchase of the furniture, but that all of her expressed acts were consistent with her original telegraphed statement that she would not be a party to the purchase . . . that the authority given to Orrell as agent covered the general management of the property, collection of all rents, except from the hotel, and payment of bills, but that his authority as such agent did not include the right to make the purchase of the furniture . . . that there was a loss of $1,850 without any computation of interest . . . and . . . that the plaintiff sustained a loss of five twelfths . . . of that amount, or the sum of $770.83 . . . that the defendant O'Donnell, by his directions to the agent Orrell, assumed full responsibility for the purchase of the furniture and is liable to the plaintiff for the amount of her loss."

These findings in the absence of a report of the evidence must stand. It is plain from the findings that there was no express ratification by the plaintiff of the purchase of the furniture. It is also true that the subsidiary findings with proper inferences to be drawn therefrom warranted the finding that the plaintiff did not impliedly ratify the purchase of the furniture with money belonging to the owners. The circumstances that the hotel was conducted

by Orrell as agent of the cotenants, that the furniture was used in connection with the business, and that the plaintiff received monthly statements of the receipts and expenditures in carrying on the hotel, do not require a ruling that as matter of law the plaintiff impliedly ratified either the purchase of the furniture or its sale thereafter. This is not a case where silence as matter of law amounted to an expression of assent. See *Foster* v. *Rockwell*, 104 Mass. 167, 172; *Metcalf* v. *Williams*, 144 Mass. 452, 455. It is found that on September 27 before the purchase of the furniture Orrell received the telegram from the plaintiff stating "I will not be party to buying furniture." Orrell read this telegram to the defendant O'Donnell who instructed him to go on with the sale. It thus appears that both of them knew the plaintiff was opposed to it.

It could be found that from the time the plaintiff first learned of the proposed purchase of the furniture she opposed it by letters and telegrams, and that after the purchase had been consummated and it was proposed to sell the furniture to Delaney she refused to become a party to the sale. It is difficult to conceive of anything more that she could have done to express her dissent from these unauthorized acts. She was not bound by the unauthorized acts of her agent. There is no evidence to justify a finding that her cotenant O'Donnell was her agent for any purpose. It could not be ruled upon the evidence that the plaintiff as matter of law expressly or impliedly authorized the purchase of the furniture by either Orrell or O'Donnell. It was said by Knowlton, J., in *Brown* v. *Henry*, 172 Mass. 559, at page 568, that, "Ordinarily, ratification of an agent's act is a mere matter of intention. In the present case the defendants, as soon as the facts were ascertained, manifested in the clearest manner their intention not to ratify, and their subsequent conduct has all been consistent with their original repudiation of the attempted sale." That statement is peculiarly pertinent to the facts found in the case at bar. *Greenfield Bank* v. *Crafts*, 2 Allen, 269. *Combs* v. *Scott*, 12 Allen, 493, 497. *See* v. *Norris*, 234 Mass. 345, 349. *Washburn-Crosby Co.* v. *Pedro*, 253 Mass. 460, 461.

*A. Blum Jr.'s Sons* v. *Whipple*, 194 Mass. 253, 257. See also 2 C. J. pages 492–493, § 112, and cases cited. In the opinion of a majority of the court the finding of the master that the defendant O'Donnell by his directions to his agent Orrell assumed full responsibility for the purchase of the furniture and is liable. to the plaintiff for the amount of her loss was fully justified. The interlocutory decree overruling the defendant O'Donnell's exceptions and confirming the report and the final decree are affirmed with costs.

*Ordered accordingly.*