Bradly, Appellant, *v.* Potts.

*Practice, C. P.—Rule for more specific statement—Demurrer.*

A rule for a more specific statement, although sanctioned by the rules of court, cannot be made a substitute for a demurrer.

*Appeal—Final judgment—Order making absolute rule for more specific statement.*

Where an order making absolute a rule for a more specific statement is, in its practical effect, a judgment for defendant, the Supreme Court will treat it as a final judgment from which an appeal will lie.

*Pleading—Averment of facts—Inference of fraud.*

A statement set out an agreement in writing by defendant, in his own name, to sell plaintiff a farm, with an averment that said farm included certain land, the subject of controversy; that plaintiff, on asking for the title papers in order to draw a deed under the agreement, was furnished by defendant with a deed purporting to convey to defendant's wife the land in the agreement; that, following the description in said deed, a conveyance was prepared by plaintiff, executed by defendant and wife, and the purchase money paid or secured according to agreement; that subsequently plaintiff, on receiving delivery of possession by defendant, learned that the deed did not convey the whole of the farm, but omitted an important part thereof which furnished access to a public road; and that defendant on being requested to fulfill his agreement by conveyance of this part of the farm refused to do so, though offered the contract price. *Held,* that the statement set forth sufficient facts to submit to the jury on the question of fraud, and that plaintiff was entitled to an issuable plea and a trial.

Argued April 3, 1893. Appeal, No. 295, Jan. T., 1893, by plaintiff, William Bradly, to use of Joseph Costello, from order of C. P. No. 1, Phila. Co., March T., 1892, No. 385, making absolute rule for more specific statement in favor of defendant, Hiram Potts. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit for breach of contract to sell land.

Plaintiff's statement was as follows:

"1. The plaintiff avers that the defendant, Hiram Potts, on the twenty-fourth day of July, A. D. 1891, entered into a certain written agreement with the plaintiff, of which a full and correct copy is as follows:

"'This agreement, made the 25th day of July A. D. one thousand eight hundred and ninety-one between Hiram Potts, merchant, of the city of Philadelphia, of the first part, and William Bradly, attorney, of the said city, of the second part: Witnesseth, that the said party of the first part, for the consideration hereinafter mentioned, doth hereby for himself, his heirs, executors and administrators, covenant, promise and agree with the said party of the second part, his heirs and assigns, that he the said party of the first part, shall and will, on or before the 25th day of October, 1891, at the proper cost and charges of the said William Bradly Atty his heirs and assigns, by a good and sufficient deed of conveyance, doth grant, convey and assure, unto the said party of the second part, his heirs and assigns, all that certain farm of land situate in Springfield and Cheltenham township, Montgomery county, Pennsylvania, known as the Hiram Potts farm and fronting on Willow Grove avenue containing about sixty-two acres, together with all and singular the buildings and other improvements, and appurtenances thereunto belonging. And the said party of the second part, for himself his heirs, executors and administrators, doth hereby covenant promise and agree with the said party of the first part, his heirs and assigns, that he the said party of the second part, shall and will well and truly pay unto the said party of the first part, his heirs and assigns, the sum of five thousand dollars within three months from date and the further sum of five thousand dollars upon the delivery of deed and a bond and mortgage for the balance of the consideration secured upon the property.

Full price to be one thousand dollars per acre. Time of mortgage to be within three years at five per cent interest. Property to be clear of incumbrance except above purchase-money mortgage. The party of the first part to release any portion of the property from the lien of mortgage upon payment of two thousand dollars per acre by the party of the second part. Any crops in the ground to be paid for by party of second part by appraisement.

" ' In witness whereof, the said parties to these presents have hereunto set their hands and seals this twenty-fifth day of July, one thousand eight hundred and ninety-one.'

With signature and seals of the parties and signatures of witnesses; also receipt for first payment, acknowledgment and certificate of record.

" 2. In and by the said contract the defendant represented himself to be the owner of a certain farm therein described, and in and by the said contract he contracted to convey the whole of the said farm to the plaintiff upon the plaintiff's payment of the purchase money at the rate of $1,000 per acre, on the terms therein set forth.

" The plaintiffs have lately had a survey and plan of the said farm made, a copy of which is annexed hereto in blue print. The said the Potts farm as described in the said contract is the whole of the space included within the lines B C, C E, E F, F G H, H I J, and J A B, as shown on the plan. The line J A B is the front of the said farm on Willow Grove avenue, otherwise known as the Mermaid road. The said farm is bounded on its north side, B C, C E, and E F, by properties formerly of James Brooks and George Schriver and now owned by Grace L. Sims, and it is bounded on the side F G H, and on the side H I J, by the properties of other individuals, to wit, Megargee, Bisbing, and Fenton. The only roads upon the farm communicating with the public highways are, first, the road shown by the dotted lines immediately next to the northern boundary of the farm B C, and also a road next to the boundary between C and E, connecting with a private road crossing the Brooks or Sims land, and thereby communicating with the highway known as the Church road, which highway is the northern boundary of the Sims tract. Access to the last-mentioned private road is of great value, for it is the only means of carrying drainage from the Potts farm to the said Church road.

" 3. After the said contract had been made, and on or about October 2, 1891, the plaintiffs discovered, from a statement to that effect made by the defendants to the plaintiff, that the defendant was not the owner of said farm, but that the defendant's wife, Hannah K. Potts, was the owner of the said farm, and that the defendant had made the contract as her agent and without disclosing the name of his principal; and the plaintiff, William Bradly, then requested the defendant to cause the said certain farm of land situate in Springfield and Cheltenham townships, Montgomery county, Pennsylvania, known as the Hiram Potts farm, and fronting on Willow Grove avenue, containing about sixty-two acres, together with all and singular the buildings and other improvements and appurtenances thereunto belonging, to be conveyed to Joseph Costello in performance and satisfaction of the contract made by the defendant and hereinbefore set out.

" 4. On or about the second day of October, 1891, the plaintiff demanded from the defendant his title deeds of the said the Hiram Potts farm, in order that the deed of conveyance to the plaintiff might be drawn, and the defendant then handed to the plaintiff a certain deed dated the first day of April, 1871, and recorded in the office for recording of deeds, etc., in and for Montgomery county, at Norristown, Pa., in Deed-book No. 191, page 287, etc., wherein Joseph Yeakel and others were the grantors, and Hannah K. Potts, the wife of the defendant, was the grantee, and whereby there was conveyed to the said Hannah K. Potts in fee 'all that messuage and farm or tract of land situate in the townships of Cheltenham and Springfield, in the county of Montgomery and state of Pennsylvania, bounded and described as follows: Beginning at a point in the Mermaid road in Cheltenham township one perch and forty-eight hundredths of a perch from a poplar tree in a corner of Sophia Fenton's and other lands of Huston's estate; thence on and along the said Mermaid road north nineteen degrees and ten minutes east sixty-four and seventy-six hundredths perches to another point in said road a corner of this and other lands now or late of Hustons and lands of John Funk; thence north forty-eight degrees and five minutes west across the township line into Springfield township west sixty and sixteen hundredths perches to a stone at another corner; thence north thirty degrees and

ten minutes east seven and fifty-six hundredths perches to another stone set for a corner in George Shriver's land; thence north forty-seven degrees and forty-five minutes west fifty-five and sixteen hundredths perches to a stake a corner of Shrive's and Sylvester Megargee's land; thence south forty-three degrees west seventy-eight and ninety-four hundredths perches to a stone set for a corner in Robert Bisbing's and said Megargee's land; thence south forty-eight degrees and three minutes east ninety and ninety-two hundredths perches by land of Robert Bisbing to a corner of Bisbing's and Fenton's land on the township line of Cheltenham and Springfield townships; thence along Sophia Fenton's land south sixty-one degrees and ten minutes east fifty-four and three hundredths perches to the place of beginning.    Containing fifty-nine acres and one hundred and twenty-six perches of land, more or less.

"5. The plaintiff, believing that the said deed from Joseph Yeakel and others contained the full description of the whole of the said the Hiram Potts farm, had the description in the deed to be executed by the defendant and his wife in fulfillment of the defendant's said contract drawn from the said Yeakel deed, and on or about the twenty-eighth day of October, 1891, the defendant and his said wife executed and delivered to the equitable plaintiff, Joseph Costello, a deed dated the seventeenth day of October, 1891, and recorded in the office for the recording of deeds in and for Montgomery county, in Deed-book No. 363, page 111, conveying to the plaintiff the therein described land, which was the same tract of land described in the Yeakel deed, so as aforesaid designated by the defendant as the title deed of the said the Hiram Potts farm.

"6. The plaintiffs, believing that the said deed conveyed to Joseph Costello in fee all of the said the Hiram Potts farm, accepted the said deed when delivered, and the plaintiff, Joseph Costello, then executed and delivered to the defendant Hiram Potts and Hannah K. Potts, his wife, a certain purchase-money mortgage for $50,000, which mortgage is recorded in the offices for the recording of deeds in and for Montgomery county, in Deed-book No. 234, page 186, etc., and the plaintiff, Joseph Costello, also paid to the defendant for himself and his wife the sum of $9,787.50, in cash, and on the twenty-eighth day of October, 1891, the defendant and his wife joined in an assign-

ment of the said mortgage to John Rodgers in trust to reassign the same to Hannah K. Potts to secure to her as and for her own property $15,000, being part of the $50,000, and the residue thereof to Hiram Potts, which assignment of mortgage is recorded in the office aforesaid in Mortgage-book No. 234, page 188; and on the twenty-ninth day of October, 1891, the said John Rodgers reassigned the said mortgage as to $15,000 thereof to Hannah K. Potts as and for her own property, and as to the residue thereof to the defendant, Hiram Potts, which reassignment is recorded in the office aforesaid in Mortgage-book No. 234, page 190.

" 7. The tract of ground conveyed by Hannah K. Potts, the wife of the defendant, to the plaintiffs, in and by the said deed, is shown on the annexed blue-print plan and is included within the lines A D, D C, C E, E F, F G H, H I J, and J A, thus not including an integral part of the Potts farm, which integral part is assessed for taxation as a part of the said the Hiram Potts farm, and is not separated from the remaining portion of the said the Hiram Potts farm by any fence or dividing line, and also not including the two farm roads hereinbefore referred to, and thus shutting off the present means of communication from the said farm with the Willow Grove avenue or Mermaid road, and with the Church road.

" After the execution and delivery of the said deed, and on or about the thirty-first day of October, 1891, the plaintiff, Bradly, met the defendant upon the said farm for the purpose of obtaining possession thereof from the defendant, and the plaintiff then and there, and for the first time, learned that the deed to the plaintiff, Costello, had not conveyed the whole of the said farm, but that the defendant's wife still held a part of the said farm, being about two acres, adjoining the Brooks or Sims tract, title to which had been vested in her by a deed or deeds, which the defendant when asked aforesaid for his title deeds had failed to deliver to the plaintiffs.

" 8. The plaintiff then and there demanded a conveyance to Joseph Costello of the portion of the Hiram Potts farm so unconveyed, to wit, ' all that certain lot or piece of ground situate in Cheltenham and Springfield townships, in the county of Montgomery, beginning at a point in the middle of Mermaid road, it being a corner of ground now of Joseph Costello;

thence along the ground of said Joseph Costello across the township line into Springfield township north forty-seven degrees twenty minutes west nine hundred and ninety-two and sixty-four hundredths feet to a corner of this and other ground now of Joseph Costello; thence along the same north thirty degrees forty-three minutes east eighty-three and sixteen hundredths feet to a corner of the ground late of James Brooke and now of Grace L. Sims; thence along the same south forty-seven degrees twenty minutes east across township line into Cheltenham township nine hundred and ninety-seven and forty-six hundredths feet to the middle of said Mermaid road; thence along the same south nineteen degrees forty-three minutes west thirty-eight and eighty-six hundredths feet to the place of beginning; containing about one and five-sixth acres, more or less.' The land thus described unconveyed as aforesaid is shown on the annexed blue-print plan as included within the lines A B, B C, C D, and D A, and is, as hereinbefore stated, an integral part of the Hiram Potts farm, not separated from the rest of the said the Hiram Potts farm by any fence or other line of division, and assessed for taxation as a part of the said the Hiram Potts farm, and comprising all the roads and means of access from the said the Hiram Potts farm to the public highways.

" 9. The plaintiffs have demanded from the defendant a conveyance of the last herein described land and have offered to pay the defendant therefor in cash at the rate of $1,000 per acre, in accordance with the said contract, but the defendant has refused, and still does refuse, to make a conveyance of the said land, or to procure a conveyance of the said land to the plaintiffs.

" 10. Before the plaintiffs had discovered that the defendant had not conveyed to them the whole of the said the Hiram Potts farm, the plaintiffs contracted to sell to John C. Sims, for the price of $2,000 per acre, seven and one half acres of ground adjoining the northern boundary of the said the Hiram Potts farm, and including the very ground which the defendant has failed and refused to convey as aforesaid, and by reason of such failure and refusal on the part of the defendant, the plaintiffs have been unable to fulfill their said contract with the said John C. Sims, and have thereby lost the advan-

tage of that sale, and have thereby subjected themselves to a liability in damages to the said John C. Sims.

"11. The said land which the defendant contracted as aforesaid to convey to the plaintiffs, and which the defendant has failed and refused to convey to the plaintiffs, was at the time this action was brought and is now worth, in fair market value, more than $2,000 per acre ; that is, more than double the contract price of the said land.

"12. The plaintiffs have been damaged by the defendant's breach of his said contract in the sum of $5,000 for the difference between the contract price and the market price at the date of action brought of the tract of land so as aforesaid contracted to be conveyed by the defendant to the plaintiff, but not conveyed, and in the further sum of $5,000 for expenditures incurred and to be incurred by the plaintiffs in making a road from the Willow Grove avenue or Mermaid road into the said the Potts farm, and in the further sum of $5,000 for the obstruction of the right of way over the Brooks or Sims farm, caused by the defendant's failure to convey the said tract of land which he had, as aforesaid, contracted to convey, and in the further sum of $7,500 for the loss of the profit on the sale contracted to be made to the said John C. Sims, and in the further sum of $5,000 for the plaintiffs' liability in damages to the said John C. Sims for the plaintiffs' breach of their contract with him, and also in the further sum of $1,000 for the costs of this action, and for this the plaintiffs bring their suit."

The court made absolute a rule for a more specific statement.

*Errors assigned* alleged that the court erred (1) in making the rule absolute ; (2) in entering judgment ; (3) in deciding that plaintiff, appellant, was not entitled to recover damages.

*George Stuart Patterson* and *C. Stuart Patterson, John W. Jennings,* with them, for appellant.—The agreement of sale was not merged in the deed: Lee v. Dean, 3 Whart. 316 ; Close v. Zell, 141 Pa. 390 ; McGowan v. Bailey, 146 Pa. 572.

The question as to whether or not the conduct of the vendor has been so fraudulent as to entitle the vendee to damages for

the loss of his bargain is one of fact for the jury: Bitner v.
Brough, 11 Pa. 135; McNair v. Crompton, 35 Pa. 23.

It is not necessary to allege fraud specifically, if facts be set
out in a statement from which the fraud could necessarily be
implied: Hollenback's Ap., 121 Pa. 322; Griswold v. Gebbie,
126 Pa. 365.

*S. Edwin Megargee*, for appellee.—If a person enters into a
contract for the sale of real estate, whether under the belief that
he has a good title or knowing that he has no title nor any
means of acquiring one, the purchaser, in the absence of fraud,
cannot recover damages beyond the expenses he has incurred:
2 Addison, Cont., p. 901; Hertzog v. Hertzog, 34 Pa. 418; Ty-
son v. Eyrick, 141 Pa. 296.

The statement neither alleges fraud nor does it state a single
fact not consistent with perfect fair dealing.   Hollenbach's Ap.,
121 Pa. 322, does not decide that an averment of fraud is un-
necessary in the pleadings when fraud is to be relied upon to
make out a case.

Relief will not be afforded upon the ground of fraud unless
it be made a distinct allegation in the pleadings: Norman v.
Lee, 2 Black, 499; Patton v. Taylor, 7 Howard, 132; Bear's
Estate, 60 Pa. 430.

It was not a fraudulent concealment that, when plaintiff asked
Potts for the title deeds of the Hiram Potts farm, he handed
him one deed and did not hand him another for the other tract:
Cortelyou's Ap., 102 Pa. 576; Rodgers v. Olshoffsky, 110 Pa.
147.

According to the statement filed, this land was and is the
property of Hannah K. Potts.   The law does not permit her hus-
band to dispose of it or to coerce her to dispose of it: Stoops v.
Blackford, 27 Pa. 213; Roseburgh v. Sterling, 27 Pa. 292;
Miller v. Ruble, 107 Pa. 395.

The case of Lee v. Dean, 3 Whart. 316, relied upon by plain-
tiff's counsel, reveals a plan of fraud so flagrant that there could
be no serious question that the court would afford relief.   Close
v. Zell was an action upon a parol agreement outside of the
deed.   Its enforcement did not in any way involve a proceeding
to change, alter, modify or reform the deed.   It was a stipula-
tion for indemnity against the title being bad.   In McGowan

v. Bailey, it was held that if stipulations contained in the agreement were omitted from the deed, such stipulations were not merged in the deed, but that if there were provisions or covenants in the deed which took the place of or supplied the omitted clauses, that there would be a merger.

The agreement merged in the deed : Smith v. Evans, 6 Bin. 102; Frederick v. Campbell, 13 S. & R. 136 ; Coughenour v. Stauft, 77 Pa. 192; Kreiter v. Bomberger, 82 Pa. 59.

The case herein is not to be confounded with such a case as Bitner v. Brough, 11 Pa. 127, relied upon by plaintiff's counsel. There the land belonged to the husband and it was charged, and there was evidence to support the charge, that the refusal of the wife to sign was at his instigation.

OPINION BY MR. JUSTICE MITCHELL, May 22, 1893.

This order must be reversed as an irregular and unauthorized mode of reaching a result different from what it professes to do.   In terms it is a rule absolute for a more specific statement.   Such a rule is apparently sanctioned by the rules of the court below, and may have its usefulness in its proper province, since what would have been a bill of particulars under the common counts may now, under the procedure act of 1887, be incorporated in the statement, and may lack precision of names, dates, amounts, etc., as the bill of particulars might in the old practice.   But such a rule cannot be made a substitute for a demurrer.   We have unfortunately no opinion from the learned court below to show the grounds of its action, nor has the appellee pointed out any lack of specificness or precision in the statement to justify the order.   On the contrary we are informed that the objection is not really as it professes to be, that the statement is not sufficiently specific, but that it does not set forth a good cause of action.   The established and only way to raise that question is by demurrer.   On that the rights of the parties can be adjudicated, and the case ended or ordered to proceed.   Nothing is to be gained by the substitution of a nondescript order, unknown to the law, which has not the effect of a judgment for either party, but leaves the case suspended like Mahomet's coffin, so that the plaintiff cannot get on, and yet the defendant is not discharged.   It is useless to say that plaintiff can amend his statement, for the amendment

he is ordered to make is of a defect that does not exist.  The names, and dates, and amounts in every averment are precise and specific, there is no real defect in that respect, and no amendment in regard to them would meet the real objection, that taking everything he sets forth to be true he does not show any cause of action.  That as already said can only be settled on demurrer, and a rule such as here made absolute is not an equivalent.

On the face of the record there is no final judgment, but merely an apparent interlocutory order from which an appeal would not lie.  But it is said by appellant, and appears to be conceded by appellee, that in its practical effect the rule is a judgment for defendant.  We are therefore compelled to treat it as the subject of appeal, or leave the plaintiff without remedy for a plain wrong.

The statement does not in terms declare upon the fraud of defendant, and has other serious faults in that it does not aver facts categorically according to their legal effect, which is the office of good pleading, but sets out the evidence in extenso, with the facts affirmed or implied, all in a general mixture together.  But it is a fair specimen of such pleading as the act of 1887 invites, and ought not to be held fatally bad if on scrutiny it discloses the substantial requisites of a good narr in deceit.  We think it does so.  It is not indispensable that fraud should be averred in express terms if the facts would support an inference of fraud by the jury.  This statement sets out the agreement of defendant in writing in his own name to sell plaintiff the "Hiram Potts farm," with an averment that said farm includes certain land, the subject of controversy; that plaintiff, on asking for the title papers in order to draw a deed under the agreement, was furnished by defendant with a deed purporting to convey to defendant's wife the land in the agreement; that following the description in said deed, a conveyance was prepared by plaintiff, executed by defendant and wife, and the purchase money paid or secured according to agreement; that subsequently plaintiff, on receiving delivery of possession by defendant, learned that the deed did not convey the whole of the Hiram Potts farm, but omitted an important part thereof which furnished access to a public road; and that defendant on being requested to fulfill his agreement by convey-

ance of this part of the farm refused to do so though offered the contract price. The statement thus epitomized shows a clear breach of agreement, and one which may without straining bear the construction of a fraudulent trick. It is for the jury to say whether the facts as set out are proved and, if so, whether they show a fraud on the part of defendant. On his statement the plaintiff is entitled to an issuable plea, and a trial.

With the question of damages we have at present nothing to do.

The order making absolute the rule for more specific statement is reversed, the rule discharged, and procedendo awarded.