NATIONAL UNION BANK OF MARYLAND *vs.*
MILLER RUBBER COMPANY.

*Checks—Forged Indorsements—Liabilities of Collecting Bank—
Breach of Trust—Equity Jurisdiction.*

A check does not operate as an assignment of the fund on
which it is drawn, and gives the payee no rights against the
drawee.                                          p. 455

While a payee cannot recover against the drawee bank the amount of a check which it has paid on a forged indorsement, a different principle applies when a collecting bank cashes a check on a forged indorsement, the bank in such case holding the check, and also the proceeds of the collection of the check, for the payee, who, if he ratifies the bank's collection of the check, may recover from the bank the amount collected.

pp. 455, 456

Any indication that a bank customer was using for his own benefit a document *prima facie* created for the benefit of, and the property of, another person, should put the bank on inquiry.                              p. 457

A bank which knew the signature of a corporation depositor, and knew that another depositor, a firm, was the selling agent of the corporation, and also that it had no authority to indorse checks drawn to the corporation's order for the individual account of the firm, was chargeable with notice that the firm's indorsement of such checks for the purpose of deposit in the firm's account was wholly unauthorized and was, as against the corporation, a forgery.                  pp. 457, 458

A bank which, by its negligence in accepting for deposit, and collecting, checks which were without authority indorsed by agents of the payee for deposit in the agents' individual account at the bank, participated with such agents in their breach of trust, and the proceeds of the bank's collection of the checks were impressed with a trust in favor of the principal.

p. 458

Where a bank, by its negligence in accepting for deposit, and collecting, checks wrongfully deposited by agents to their own credit, participated in the agents' breach of trust, the dealings between the parties extended over several years, and included a large number of transactions, some of them unknown to the principal, *held* that the principal was entitled to proceed in equity against the bank to enforce the trust impressed upon the proceeds of its collection of the checks.          p. 458

In a suit by the payee of checks against a bank in which the checks were deposited, under forged indorsements, by the payee's agents to their own credit, *held* that the bill was technically defective in failing to aver that the checks were ever collected by the bank, but that this might be inferred from an

allegation of a diversion of plaintiff's funds, such construction being apparently that placed on such allegation by the defendant.                                                                    p. 459

*Decided June 11th, 1925.*

Appeal from the Circuit Court of Baltimore City (STEIN, J.).

Bill by the Miller Rubber Company of New York against the National Union Bank of Maryland. From an order overruling a demurrer to the bill, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*Harry N. Baetjer* and *Joseph France,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellant.

*Edgar Allan Poe,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This appeal presents two questions, one, whether the appellee has the right to recover from the appellant the proceeds of checks drawn to the appellee's order, which were deposited by the appellant to the credit of the appellee's agents upon their unauthorized endorsements, and second, whether if such a right exists it can be enforced in a court of equity; and these questions are presented by the action of the Circuit Court of Baltimore City in overruling a demurrer to a bill of complaint filed by the appellee against the appellant to require it to pay over to the appellee the proceeds of checks alleged to have been "fraudulently and wrongfully" diverted from its account by the concurring acts of its agents and the appellant.

The bill of complaint alleges that the appellee is engaged in the business of manufacturing and selling automobile

tires, tubes, and accessories, and kindred products, having
its principal factory located at Akron, Ohio, and that it
sells and distributes its products through agencies located at
different points throughout the country.   That on January
1st, 1920, it entered into a contract with G. R. Schumann
and R. Cator Robinson, trading as Schumann & Robinson,
whereby they became the distributing agents at Baltimore
for its products, and that they continued as its distributing
agents until January 1st, 1923, when Robinson retired, and
that thereafter Schumann continued as its sole distributing
agent until January 1st, 1924.   That in the early part of
February, 1920, the appellee opened a deposit account with
the National Union Bank of Maryland at Baltimore, Mary-
land, "one of the defendants herein, into which account, as
was then fully explained to the said bank, and the said bank
then well knew, all checks were to be deposited by the said
Schumann & Robinson, given by purchasers of the manu-
factured products of your orator, drawn to the order of your
orator, sold and distributed, and to be sold and distributed,
through and by the said distributing agents, Schumann &
Robinson, to all of which the said bank then agreed, and at
which time, signature cards of your orator were given to the
said bank, together with certain extracts from the by-laws of
your orator with reference to the authorization of officers of
your orator, to open bank accounts, and to withdraw there-
from the funds deposited therein."   That thereafter the dis-
tributing agents Schumann & Robinson daily deposited
many checks drawn to the appellee's order to its account in
the appellant bank, and the funds so deposited were with-
drawn from time to time by the appellee by check duly signed
by its officers in accordance with the signature cards given
to the appellant, until January 1st, 1923, when Robinson
withdrew from the agency and thereafter the same practice
was followed by Schumann until January 1st, 1924; that
early in January, 1920, Schumann & Robinson opened an
account in the same bank under the name of "Schumann &
Robinson" and that account was continued until the early

part of January, 1923, when it was closed and an account
opened in the name of Schumann alone. The bill then states:
"That your orator has recently discovered that beginning on
or about the 4th of January, 1920, and continuing thereafter
until on or about January 1st, 1923, the said Schumann &
Robinson fraudulently and for the purpose of diverting and
misapplying funds of your orator, deposited in the said de-
posit account of Schumann & Robinson in the said National
Union Bank of Maryland, opened as aforesaid, instead of
depositing in the said deposit account of your orator in the
said National Union Bank of Maryland, opened as afore-
said, many checks given by purchasers of manufactured
products of your orator, drawn to the order of your orator,
for manufactured products sold and distributed through and
by the said Schumann & Robinson agency at Baltimore, the
said checks so diverted having been fraudulently and without
authority endorsed by the said Schumann & Robinson for
deposit in their said bank account before the said checks
were presented to the said National Union Bank of Mary-
land to be so fraudulently deposited and notwithstanding the
said checks, and all of them, at the time they were presented
to the said National Union Bank of Maryland by the said
Schumann & Robinson, contained the endorsement of Schu-
mann & Robinson fraudulently, and without authority made
by the said Schumann & Robinson, the said National Union
Bank of Maryland negligently and without exercising ordi-
nary care and prudence, and in violation of the rights of
your orator, and in disregard of the duty and obligation it
owed to your orator, participated in and took part in, the
fraudulent conversion and misapplication by depositing said
checks in the bank account of the said Schumann & Robin-
son instead of in the bank account of your orator, where the
said National Union Bank of Maryland should have deposit-
ed said checks; and that on and after January 1st, 1923, the
practice as aforesaid was continued by the said G. R. Schu-
mann and the said National Union Bank of Maryland until
on or about January 1st, 1924, the funds so fraudulently

diverted and misapplied being in excess of $30,000, the exact amount thereof being unknown to your orator." It then goes on to allege "that the said checks of purchasers of manufactured products of your orator, drawn to the order of your orator, were received by the said Schumann & Robinson and/or G. R. Schumann in pursuance of an employment which reposed in them special trust and confidence, and imposing upon them and the said National Union Bank of Maryland specifically the duty of depositing all of said checks in the said deposit account of your orator with the said National Union Bank of Maryland, the funds so represented by said checks being impressed with a trust for the benefit of your orator." And finally it alleges: "That the said National Union Bank of Maryland by its gross negligence, in depositing in the bank accounts of Schumann & Robinson and/or G. R. Schumann, checks given by purchasers of manufactured products of your orator, sold and distributed through the distribution agency at Baltimore, drawn to the order of your orator and fraudulently and without authority endorsed by Schumann & Robinson and/or by G. R. Schumann before the said checks were presented to said bank for deposit, thereby co-operating with the said Schumann & Robinson and/or the said G. R. Schumann, participated in and took part in the wrongful and fraudulent conversion of your orator's funds, which wrongful and fraudulent conversion could have been prevented by the exercise of ordinary care and prudence by the said bank in declining and refusing to deposit the said checks in the deposit accounts of the said Schumann & Robinson and/or the said G. R. Schumann, at the time the said checks were presented to the said bank by the said Schumann & Robinson and/or the said G. R. Schumann."

The appellant denies that it is liable to the appellee either at law or in equity for the proceeds of the checks drawn to the appellee's order and deposited to the account of Schumann & Robinson, because it says there is no privity of contract between it and the Miller Rubber Company, and in

support of that contention it relies mainly upon the case of *Tibby Bros. Glass Co. v. Bank,* 220 Pa. 1.

The decision in that case rested, as the appellant's contention here rests, upon a supposed analogy between the rights of a payee of a check against a drawee bank which has paid it on a forged endorsement, and the rights of such a payee against a collecting bank which has paid a check on a forged endorsement and collected it from the drawee bank.

That case undoubtedly supports the appellant's contention, but it cites no authority in support of its conclusion that the payee cannot recover against the collecting bank because of a want of privity between them; it has not been followed in other states, and is opposed to whatever authority there is on the question.

In this State a check does not operate as an assignment of the fund upon which it is drawn, and gives the payee no rights against the drawee. *Moses v. Franklin Bank,* 34 Md. 574. And if the analogy between such a case and the one before us is sound, the appellee has no claim either at law or in equity against the appellant. But upon the decided weight of authority the two cases involve distinct principles and there is no analogy between them.

The right of a payee to recover against a drawee bank the amount of a check which it has paid on a forged endorsement is denied, because the funds of the drawer are not diminished by such payment nor is the indebtedness of the drawer to the payee affected thereby, and since no interest in the fund has been assigned to him, the payee has no contractual relation whatever with the drawee bank, which holds the fund for the drawer and not for the payee.

Where, however, a collecting bank cashes a check on a forged endorsement a different principle applies. There the collecting bank on the forged endorsement acquires no title whatever to the paper because the endorsement, its only source of title, is a nullity. It therefore is wrongfully in possession of the check and in equity and good conscience holds it for the payee. If, while in possession of it, it by

means of the forged endorsement collects it, then it holds the proceeds of the collection in the same way for the payee, and that relationship creates a privity between it and the payee. And if the payee elects to ratify the collection of the check by the collecting bank he may recover from it the amount collected.

There may be a certain artificiality about this reasoning, but it is not only supported by the weight of authority, but the result reached by it in the end is the same which would be effected under the rule stated in *Tibby v. Bank, supra,* and in reaching that end it avoids a useless multiplication of litigation. For under that rule the collecting bank would be liable to the drawee; the drawee would still be liable to the drawer, the drawer to the payee, and the forger to the collecting bank.

Nowhere are the reasons for the rule, which permits the payee to recover from a collecting bank the amount of a check which came into its possession upon a forged endorsement, more clearly stated than in *Buckley v. Second National Bank of Jersey City,* 35 N. J. L. 402, where it is said: "Can there be any doubt that the plaintiff owned the check when it came into the defendants' hands? Having been sent to the plaintiff's agent, and received by him for the plaintiff's use, the transfer of title from the United States to the plaintiff was complete. The plaintiff, by such transfer, became the absolute owner of the check. Did he cease to be the owner when, by means of a forged endorsement of the plaintiff's name, the check was passed by Crossman to the defendants? On this point the law is well settled. 'When a bill is assignable only by endorsement,' says Mr. Chitty, 'as no interest can be conveyed otherwise than by that act, and as it is a general rule that no title could be obtained through a forgery, any person getting possession of it by a forged endorsement, will not acquire any interest in it, although he was not aware of the forgery. * * * It is clear, then, that nothing passed to the defendants by virtue of the forged endorsement. The plaintiff's right to the check remained precisely as it

was before his name was forged. The check, therefore, when the defendants obtained the money on it, was the property of the plaintiff, and in that case he may, as we have seen, recover the amount in this action, as money received by the defendants to his use. * * * The defendants' case is not helped by the fact that the forged endorsement was made or contrived by the plaintiff's agent. *Johnson v. Windle,* 3 Bing. N. C. (32 E. C. L. R. 112) 225; *Smith, Assignee of Bagnall & Hand, v. Sheppard,* a MS. case of Lord Mansfield, cited in *Chitty on Bills* 261."

The same principle is stated in these words in *Morse on Banking* (4th ed.), vol. 1, p. 483: "If a negotiable instrument having a forged indorsement come to the hands of a bank and is collected by it, the proceeds are held for the rightful owners of the paper, and may be recovered by them, although the bank gave value for the paper, or has paid over the proceeds to the party depositing the instrument for collection."

And it is supported in a number of cases referred to in a note to *U. S. Portland Cement Co. v. U. S. Nat. Bk.,* L. R. A. 1917 A, 148.

And so far as we have been able to discover the only case announcing a contrary doctrine is *Tibby Bros. Glass Co. v. Bank, supra.* In our opinion the better rule, both upon reason and authority, is that stated in *Morse on Banking, supra,* and if the facts stated in the bill are sufficient to bring the appellee's claim within that rule it is good as against the appellant. Accepting the allegations of the bill as true, the only negligence chargeable against either party must be imputed to the appellant. In 1 *Halsbury's Laws of England,* p. 594, it is said: "Apart from a procuration signature, any indication that the customer is using for his own benefit a document *prima facie* created for the benefit of, and being the property of, another person should put the banker on inquiry," and that we think is a sound rule. In this case the appellant knew the appellee's signature, it knew Schumann & Robinson's relation to the appellee, and it knew that

they had no authority to endorse checks drawn to the appellee's order for their individual account. Their endorsement was wholly unauthorized and for the purposes of this case must be treated as forgery, and the appellant by ordinary diligence could have ascertained that fact.

Assuming for the moment that it is sufficiently stated, the next question is whether equity has jurisdiction to enforce the appellee's claim. In *Lupton v. Amer. Wholesale Corporation,* 143 Md. 333, the court was dealing with the claim of a principal against an agent for monies which the agent collected but failed to pay over to the principal as he was bound to do. In that case the court held that the agent, under the circumstances of the case, in collecting the money acted in a fiduciary capacity, and that the fund collected by him was impressed with a trust in favor of the principal, and decided that equity had jurisdiction to enforce that trust. And to the same effect are the cases of *Dillon v. Mutual Ins. Co.,* 44 Md. 386, and *Dombrovski v. Baltimore,* 141 Md. 422. In principle it is not clear how this case can be distinguished from *Lupton v. Amer. Wholesale Corporation, supra,* except that here the suit is not against the agent but against one which is said to have co-operated with the agent in wrongfully securing possession of the principal's funds. The money which the bank secured in that manner did not belong to it, but it held it in equity and good conscience for the rightful owner, and if, as the bill states, the appellant by its negligence or other wrongful act participated in the breach of trust said to have been committed by the appellee's agents, then it as well as the defaulting agents may be required to answer in equity for the consequences of its acts (*Swift v. Williams,* 68 Md. 236; *Duckett v. Bank,* 86 Md. 401; *Safe Dep. & Tr. Co. v. Cahn,* 102 Md. 535), where, as in this case, the dealings between the parties extended over several years and included a large number of transactions, some of which were not known to the principal. 2 *C. J.* 888-889.

So far we have dealt with the two propositions submitted

by the appellant in its brief, as though the allegations of the bill were sufficient to present those questions, although technically speaking it is defective because it fails to aver that the checks which were cashed for the appellee's agents were ever collected by the appellant. Unless it did collect them, manifestly it is not liable to the appellee, for the only theory upon which it could be held is that it actually collected the checks and held the proceeds for the appellee. The bill does, however, allege a diversion of its funds, and it may be inferred from that that it collected the checks, and as that is the construction which the appellant apparently placed upon that allegation, we will assume that that is what it means.

It follows from what has been said that the order appealed from will be affirmed and the case remanded for further proceedings, with costs to the appellee.

*Order affirmed and case remanded for further proceedings, with costs to the appellee.*