## Lindsley et al., Appellants, *v.* First National Bank of Philadelphia.

Argued January 11, 1937. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*B. D. Oliensis,* with him *Russell Miller,* for appellants.

*Wm. Barclay Lex,* with him *Hepburn & Norris,* for appellee.

OPINION BY MR. JUSTICE LINN, March 22, 1937:

The question at this time is whether plaintiff has stated a cause of action. A writ in assumpsit was issued to recover the aggregate of sixty-five checks payable to plaintiff's order. They were drawn by various drawers on various banks other than defendant between June 25, 1927, and December 12, 1928, and were received by plaintiff in the course of business. Plaintiff's signature was forged by a bookkeeper, Luke, who delivered the checks with the forged endorsements to Anna M. Kelly or Patrick Kelly, who deposited them in the defendant bank. The defendant collected them and accounted to its depositor. Plaintiff then demanded that defendant pay the amount of checks and defendant refused. A statutory demurrer was sustained.[1] The judg-

---

[1] The grounds of demurrer were stated as follows: "1. The payee of a check may not bring action against the bank in which a check, bearing the alleged forged endorsement of the payee, has been deposited. 2. The plaintiffs have suffered no loss because of the alleged forgeries of R. A. Luke. 3. The Statement of Claim, on its face, shows laches in notifying the defendant of the alleged forgeries of said R. A. Luke. 4. There is no implication of liability against the defendant by reason of the facts set forth in the Statement of Claim."

ment was entered without discussion on the authority of *Tibby Brothers Glass Co. v. Farmers' and Mechanics' Bank*, 220 Pa. 1, 69 A. 280.

No fault can be found with the learned court below for following the *Tibby* case, as it had not been expressly overruled. We have however been asked by appellant to reconsider the ground of that decision and all agree that it cannot be sustained. It has been the subject of adverse criticism, is contrary to the decisions of nearly all, if not all, other jurisdictions in which the question has been presented[2] and, in the interest of that uniform-

---

[2] *Allen v. Mendelsohn & Son*, 207 Ala. 527, 93 So. 416; *Schaap v. State Nat. Bank*, 137 Ark. 251, 208 S. W. 309; *George v. Security Trust & Savings Bank*, 91 Calif. App. 708, 267 Pac. 560; *U. S. Portland Cement Co. v. U. S. Nat. Bank*, 61 Colo. 334, 157 Pac. 202; *Merchants' Bank v. National Capital Press* (D. C. App.), 288 Fed. 265; *Independent Oil Men's Assn. v. Nat. Bank*, 311 Ill. 278, 142 N. E. 458; *Ind. Nat. Bank v. Holtsclaw*, 98 Ind. 85; *Railroad Building, Loan & Sav. Assn. v. Bankers Mortgage Co.*, 142 Kan. 564, 51 P. (2d) 61; *Meyer v. Rosenheim*, 115 Ky. 409, 73 S. W. 1129; *Blum, Jr.'s, Sons v. Whipple*, 194 Mass. 253, 80 N. E. 501; *Nat. Union Bank v. Miller Rubber Co.*, 148 Md. 449, 129 A. 688; *Moler v. State Bank*, 176 Minn. 449, 223 N. W. 780; *Thomas v. First Nat. Bank*, 101 Miss. 500, 58 So. 478; *Universal Carloading & Dist. Co. v. South Side Bank*, 224 Mo. App. 876, 27 S. W. (2d) 768; *Passaic-Bergen Lumber Co. v. U. S. Trust Co.*, 110 N. J. L. 315, 164 A. 580; *Wen Kroy Realty Co. v. Public National Bank & Trust Co.*, 260 N. Y. 84, 183 N. E. 73; *Talbot v. Bank of Rochester*, 1 Hill (N. Y.) 295; *Crisp v. State Bank*, 32 N. D. 263, 155 N. W. 78; *Shaffer v. McKee*, 19 Ohio St. 526; *Charleston Paint Co. v. Exchange Banking & Trust Co.*, 129 S. Car. 290, 123 S. E. 830; *Knoxville Water Co. v. E. Tenn. Nat. Bank*, 123 Tenn. 364, 131 S. W. 447; *Labor Bank & Trust Co. v. Adams* (Tex. Civ. App.), 23 S. W. (2d) 814; *Calif. Stucco Co. v. Marine Nat. Bank*, 148 Wash. 341, 268 Pac. 891; *Evenson v. Waukesha Nat. Bank*, 189 Wisc. 170, 207 N. W. 415; *Underwood v. Bank of Liverpool* [1924], 1 K. B. 775. Also see *Brown v. People's Nat. Bank*, 170 Mich. 416, 136 N. W. 506; *Bell-Wayland Co. v. Bank of Sugden*, 95 Okla. 67, 218 Pac. 705. Contra: *M. Feitel House Wrecking Co. v. Citizens' Bank & Trust Co.*, 159 La. 752, 106 So. 292. See Brannan, Negotiable Instruments Law (5th ed.),

ity of decision desirable in the law of negotiable instruments, should now be overruled.

Plaintiff's claim is based on conversion, a wrong redressed by action in tort, or in assumpsit for money had and received; and at times by action in tort with a count for money had and received.[3] The plaintiff may elect the form of action to be pursued.

Section 23 of the Negotiable Instruments Law, 1901, P. L. 194, 198, 56 PS section 28, provides: "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

The statement of claim therefore alleges a case in which title to the payee's property—the checks—is still in the payee; and the averment is that the defendant, as the collecting bank, exercised dominion over the property by collecting the checks and accounting to its depositor for the proceeds in denial of plaintiffs' title to the checks.

In the *Tibby* case the plaintiff was payee of certain checks. His signature was forged by one who delivered them to the defendant for collection. Defendant collected them and paid the proceeds to the depositor. In holding that the collecting bank was not liable, the opinion, written by MESTREZAT, J., does not discuss con-

---

p. 291; Aigler, Rights of Holder of Bill of Exchange against the Drawee, 38 Harv. L. Rev. 857, 882; Notes 15 L. R. A. (n. s.) 519; 31 A. L. R. 1068; 67 A. L. R. 1535.

[3] The distinction between forms of action has lost much of its former importance; the court looks at the substance: compare *Parry v. First National Bank of Lansford*, 270 Pa. 556, 113 A. 847; *South Hills Trust Co. v. Baker*, 278 Pa. 481, 123 A. 464; *Jeffery v. American Federation of Labor*, 282 Pa. 123, 127 A. 462.

version but proceeds on the ground that as a payee cannot for want of privity, maintain an action on the check against the bank on which it was drawn, the plaintiff payee, for the same reason, should not recover from a collecting bank—a converter—who received the check from one who had no title to it, collected it and accounted to its depositor. But the legal relations existing between the payee and a collecting bank are altogether different from those of payee and drawee. The reason why the payee may not recover from the drawee is that there is no contract between them;[4] no promise by the bank to pay to the holder of the check; an enforceable contract will result if the drawee in writing accepts the check (sections 62 and 132, Negotiable Instruments Law, 1901, P. L. 203 and 212, 56 PS sections 153 and 321) but without such acceptance, the drawee's obligation is limited by its contract with its depositor. But in receiving a check for collection, the collecting bank gets no title to the check if the holder depositing it had none; by collecting it, and crediting the collection to the depositor, the bank necessarily assumes dominion over it inconsistent with the payee's control over his own property; this is conversion.[5] In the recent

---

[4] In *7th National Bank v. Cook,* 73 Pa. 483, this court seems to have recognized a right to recover for the conversion where the drawee bank had paid to an unauthorized person and charged the drawer's account, returned the check as paid, and thereafter refused to pay the true owner. To the same effect see *Goodall Real Estate v. N. Birmingham Bank,* 225 Ala. 507, 144 So. 7; *Louisville & Nashville R. R. v. Citizens & Peoples Nat. Bank,* 74 Fla. 385, 77 So. 104; *James v. Union Nat. Bank,* 238 Ill. App. 159; *Kentucky Title Sav. Bank v. Dunavan,* 205 Ky. 801, 266 S. W. 667; *Spaulding v. First Nat. Bank,* 210 App. Div. 216, 205 N. Y. S. 492; *Hartford Accident, etc., Co. v. Bank,* 63 S. D. 262, 257 N. W. 642. See Brannan, Negotiable Instruments Law (5th ed.), p. 1070; notes L. R. A. 1918C 610; 14 A. L. R. 764; 69 A. L. R. 1076. It is unnecessary in this connection, to discuss *Clark v. Warren Savings Bank,* 31 Pa. Superior Ct. 647.

[5] See Restatement, Torts, section 233. In *Underwood v. Bank of Liverpool* [1924], 1 K. B. 775, 791, SCRUTTON, L. J., said: "Now

case of *Main Belting Co. v. Corn Exchange National Bank,* 325 Pa. 168, 188 A. 865, it was held that defendant converted plaintiff's property by paying to an unauthorized person the amount of plaintiff's checks drawn on another bank and collected by the defendant. The practical advantage of allowing recovery by the payee against the collecting bank is obvious and is well stated in *National Union Bank v. Miller Rubber Co.,* 148 Md. 449, 129 A. 688 (1925), by OFFUTT, J., as follows: "Where, however, a collecting bank cashes a check on a forged indorsement, a different principle applies. There the collecting bank on the forged indorsement acquires no title whatever to the paper because the indorsement, its only source of title, is a nullity. It therefore is wrongfully in possession of the check and in equity and good conscience holds it for the payee. If, while in possession of it, it by means of the forged indorsement collects it, then it holds the proceeds of the collection in the same way for the payee, and that relationship creates a privity between it and the payee. And if the payee elects to ratify the collection of the check by the collecting bank he may recover from it the amount collected.

"There may be a certain artificiality about this reasoning, but it is not only supported by the weight of authority, but the result reached by it in the end is the same which would be affected under the rule stated in *Tibby v. Bank,* supra, and in reaching that end it avoids a useless multiplication of litigation. For under that rule the collecting bank would be liable to the drawee;

bankers who collect borrow from their customers the proceeds when collected, and in collecting exhaust the operation of the cheque. These operations. have been held to be conversion. . . ." At p. 795 ATKIN, L. J., said: "The bank so disposed of the chattels, the cheques, as to deprive both themselves and the true owners of the dominion over them, and in exchange for the pieces of paper constituted themselves the debtors of the customer. I cannot imagine a plainer case of conversion."

the drawee would still be liable to the drawer, the drawer to the payee, and the forger to the collecting bank."

In support of its demurrer, defendant also contends that plaintiff's statement shows negligence preventing recovery. The contention is that, though the statement avers prompt notice to defendant of the forgery, more particular averments support the view that defendant is excused by plaintiff's negligence. Section 23, quoted above, qualifies the provision that no right to the instrument passes by forgery by adding "unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." It does not appear in the statement exactly when plaintiff learned of the defendant's conduct in relation to the time notice was given. The law provides a method of obtaining more specific averments in proper cases.[6] But for another reason we must reject defendant's contention. The forger delivered or caused to be delivered plaintiff's property to defendant; the defendant, though misled by the forger's conduct, wronged the plaintiff. But the plaintiff as payee stood in no legal relation to the defendant as a collecting bank at the time of the forgery and therefore owed no duty to defendant. The statute of limitations specifies the period in which plaintiff could sue for redress, unless, before the period expired, the payee precluded himself by representations adopting the signature, or otherwise assenting to the passage of title. The legal relations of plaintiff and defendant are not, as defendant suggests, like those existing between the depositor and his bank, or between drawer and drawee, where the terms of the contract prescribe what must be done and thereby give rise to the duty of immediate notice: see *Marks v. Anchor Sav. Bk.*, 252 Pa. 304, 309, 97 A. 399. There is now nothing

---

[6] *Bradly v. Potts,* 155 Pa. 418, 26 A. 734; Phila. Common Pleas rule 55.

to show that after learning of the forgery plaintiff induced defendant to act as if title to the checks had passed; if the fact, defendant may show it. Being under no duty to the defendant or to the public, mere failure to notify was not of itself negligence. This conclusion is supported by authority.[7] "In *Hamlin v. Sears,* 82 N. Y. 327, at page 331, our Court of Appeals said: 'When the property of one man is wrongfully taken and sold by another, in his own name and for his own benefit, must the owner, when he afterward discovers the wrong, make efforts to reclaim his property, or notify the purchasers of his claim at the risk of losing his property? There is no authority holding that such a duty rests upon the owner of property wrongfully taken and converted. The mere silence of the owner, under such circumstances, will not bar his claim, if it be short of the time prescribed in the statute of limitations. The rule of caveat emptor applies, and the purchaser must see to it that he buys of one who owns the property or has authority to sell' ": *Stern v. President, etc., of Manhattan Co.,* 134 Misc. Rep. 351, 235 N. Y. S. 634, 638. The absence of duty to notify which results from lack of privity in such cases distinguishes them from cases where notice is required by the contract: compare *McNeely v. Bank of North America,* 221 Pa. 588, 594, 70 A. 891.

Judgment reversed, record returned for further proceedings.

---

[7] *Hamlin's Wizard Oil Co. v. U. S. Express Co.,* 265 Ill. 156, 106 N. E. 623; *Lindenthal v. Northwest State Bank,* 221 Ill. App. 145; *Miller v. Lake View State Bank,* 240 Ill. App. 395; *Stern v. Pres. & Dir. of Manhattan Co.,* 134 Misc. Rep. 351, 235 N. Y. S. 634; *Calif. Stucco Co. v. Marine Nat. Bank,* 148 Wash. 341, 268 Pac. 891. In *Bell-Wayland Co. v. Bank of Sugden,* 95 Okla. 67, 218 Pac. 705, it was held that three years delay after knowledge resulted in ratification; in *Brown v. People's Nat. Bank,* 170 Mich. 416, 136 N. W. 506, less delay was considered sufficient; see also *Blum, Jr.'s, Sons v. Whipple,* 194 Mass. 253, 80 N. E. 501.