## Allen County Motors, Inc. v. Penn State Mutual Insurance Co.

*Jeffrey Naftulin*, for plaintiff.
*Harry Lilees*, for defendants.

GARB, *J.*, July 16, 1975—We have before us a complaint in assumpsit filed on behalf of plaintiff

and against a number of enumerated defendants, one of whom is the Quakertown National Bank. Initially, preliminary objections to the complaint were filed by all of the defendants except Quakertown National Bank (hereinafter referred to as "Quakertown") and these preliminary objections have been sustained and the complaint dismissed with regard to them. Quakertown has now filed preliminary objections as in the nature of a demurrer to the complaint which have been submitted to the undersigned under and pursuant to Bucks County Rules of Civil Procedure 266.

Preliminary objections in the nature of a demurrer must be considered in such manner that all the facts which are well pleaded by the complaint, together with all reasonable inferences therefrom are admitted, but conclusions therefrom and averments of law are not admitted. Preliminary objections which result in dismissal of a plaintiff's suit should be sustained only in cases which are clear and free from doubt: Engel v. Parkway Co., 439 Pa. 559, 456 A. 2d 174 (1970). See also Buchanan v. Brentwood Federal Savings & Loan Assoc., 457 Pa. 135, 320 A. 2d 117 (1974); Ammlung v. Platt, 224 Pa. Superior Ct. 47, 302 A. 2d 491 (1973), and Allstate Insurance Co. v. Fioravanti, 451 Pa. 108, 299 A. 2d 585 (1973).

With these principles in mind, the complaint provides that plaintiff is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in that State. Defendant, Penn State Mutual Insurance Company, afforded a policy of insurance to defendant, Ernest Sickel, which provided coverage for damages to a certain 1970 Ford tractor motor vehicle. After the said motor vehicle was damaged as a result of an

accident, defendant, Penn State Mutual Insurance Company, did authorize and employ defendant, Harold Van Cleve, and defendant, Crawford & Company, to process the said claim for damages. Van Cleve and Crawford did authorize repair to the said motor vehicle to plaintiff, guaranteeing the payment for said repairs. On completion of the aforesaid repairs, plaintiff did submit final invoices for the sum total of $2,637.97, all of which, with the exception of $127.42, was to be paid by defendant, Penn State Mutual Insurance Company. On September 20, 1971, defendant Harry A. Fornwalt, ostensibly as an agent of Penn State Mutual Insurance Company, did issue a certain draft in the sum of $2,510.55 payable to Sickel, plaintiff, and Quakertown.

It is then alleged in the complaint that Fornwalt and Penn State Mutual Insurance Company knew that Sickel and his wife, defendant, Mary Sickel, had no interest in said check and wrongfully included Sickel's name thereon and thereby permitted Sickel fraudulently to endorse or forge the endorsement of plaintiff to said draft. Defendants, Ernest Sickel and Mary Sickel, it is alleged, thereupon issued but wrongfully and fraudulently stopped payment on Sickel's check for his portion of the said repair bill in the amount of $127.42. Thereupon, the complaint alleges that Quakertown, knowing that Sickel and his wife had no interest in and to the proceeds of the said draft, and with good reason to believe the endorsement by plaintiff was a fraudulent endorsement and forgery, negotiated said draft and applied the proceeds to an indebtedness owned by the said Sickel to Quakertown and wholly and completely denied plaintiff the use and benefit of the proceeds of said

draft, which proceeds were the exclusive property, allegedly, of plaintiff. Finally, the complaint alleges that, by reason of the aforesaid facts, plaintiff has been damaged in the sum of $2,510.55 and has lost the use of the money since September 20, 1971.

Quakertown alleges in its preliminary objections a number of reasons why the complaint fails to state a cause of action, for the most part each going to the substantive matters of the relationship of Quakertown to the draft and to plaintiff and asserting that the complaint fails to state any legal duty between Quakertown and plaintiff in the premises and, therefore, the complaint, allegedly, fails to state a cause of action. We are satisfied that the merit of these preliminary objections is decided by the holding in Ervin v. Dauphin Deposit Trust Co., 38 D. & C. 2d 473 (1965), and must, therefore, be denied.

Ervin was a case remarkably similar on its facts to the one before us. There, persons unnamed in the opinion had intercepted, or in some other manner secured, various checks made payable to Ervin, a medical doctor, for treatment rendered. Those unnamed persons thereupon forged the endorsement of Ervin on each of those checks and negotiated them in defendant-bank. Some of the checks were drawn directly on defendant-bank and some were drawn on other banks. With regard to those drawn on other banks, the checks were cashed and collection secured by defendant bank. The court in Ervin denied preliminary objections similar to those before us.

The court in Ervin stated the question raised by the demurrer as follows: "Is defendant bank liable, in this action of assumpsit, for money had and received when it cashed checks payable to plaintiff-

payee whether drawn on it or some other bank or banks, when the payee's signature was forged?" The court in Ervin answered the foregoing question in the affirmative. The court held that if there is a cause of action, it will lie in either tort or assumpsit, citing therefor, inter alia: Coffin v. Fidelity-Philadelphia Trust Co., 374 Pa. 378, 97 A. 2d 857 (1953); Johnson v. First National Bank of Beaver Falls, 367 Pa. 459, 81 A. 2d 95 (1951), and Land Title Bank and Trust Co. v. Cheltenham National Bank, 362 Pa. 30, 66 A. 2d 768 (1949).

In reaching its result, the court in Ervin relied principally upon Lindsley v. First National Bank of Phila., 325 Pa. 393, 190 Atl. 876 (1937), which overruled Tibby Bros. Glass Co. v. Farmers & Mechanics Bank of Sharpsburg, 220 Pa. 1, 69 Atl. 280 (1908). Although Lindsley v. First National Bank of Philadelphia, supra, predated the effective date of the Uniform Commercial Code of April 6, 1953, P.L. 3, sec. 1-101, reenacted October 2, 1959, P.L. 1023, sec. 1, 12A. PS §§1-101, et seq., it was held that the result is the same and the liability of the cashing bank still firmly established under the Uniform Commercial Code. The court in Ervin held that so far as pertinent to the question before the court, section 3-404 of the Uniform Commercial Code did not change the rights or duties of the payee and the collecting bank from that which had been established by Land Title Bank and Trust Co. v. Cheltenham National Bank, supra, wherein it was held as follows:

"The applicable rule of law is so firmly settled that it needs no elaborate citation of authorities to support it. If a check is made payable to the order of a person named therein the absolute duty of a bank

honoring the check is to pay only to that payee or according to his order, and no amount of care to avoid error will protect it from liability if it pays to a wrong person; it must ascertain and act upon the. genuineness of the endorsement at its peril."

The court held, in reliance upon Lindsley v. First National Bank of Phila., supra, which was decided under the provisions of section 23 of the Negotiable Instrument Law, Act of May 16, 1901, P.L. 194, 56 PS §323, that that specific provision of the Negotiable Instruments Law was carried in substance into the Uniform Commercial Code, changing the wording only for clarification. The foregoing was found in reliance upon and is strengthened by the Pennsylvania Bar Association notes and the Uniform Commercial Code comment, which follows section 3-404. Ervin further relied upon an annotation in 100 A.L.R. 2d (1965), beginning on page 670, wherein a collection of cases regarding this question from 30 jurisdictions was annotated. In quoting therefrom at page 672, the court in Ervin states as follows:

" 'The rule is established by the great weight of authority that in the absence of negligence, laches, or estoppel, a payee or other check owner is entitled to recover against a collecting bank or any person, firm, or corporation cashing a check bearing a forged or unauthorized endorsement of the payee or other check owner, and procuring payment thereof from the drawee of the check.' "

Simply stated, the A.L.R. annotation concludes that one who cashes a check on a forged or unauthorized endorsement does so at his peril.

The fact that there are joint payees to the check in

question is irrelevant to our determination herein. Under section 3-116(b) of the Uniform Commercial Code, it is provided that an instrument payable to the order of two or more persons, if not in the alternative, is payable to all of them and may be negotiated, discharged or enforced only by all of them. A cashing or collecting bank which paid a check drawn to joint payees without obtaining the authentic endorsement of all such payees is liable to a nonsigning payee for the value of his interest in the check unless the nonsigning payee has authorized or ratified such payment. See 47 A.L.R. 3rd 537, 542, 548 (1973). It was held in Harry H. White Lumber Co. v. Crocker Citizens National Bank, 253 Cal. App. 2d 368, 61 Cal. Rep. 381 (1967), that the first joint payee of the check in question, whose endorsement was forged by the second joint payee, had a cause of action against the collecting bank which paid the check.

For the foregoing reasons, we are satisfied that the complaint does state a cause of action and that, therefore, the preliminary objection must be denied.

## ORDER

And now, July 16, 1975 it is hereby ordered, directed and decreed that the preliminary objection as in the nature of a demurrer is hereby denied, dismissed and overruled with leave to defendant, Quakertown National Bank, to file an answer to the complaint within 20 days of the date hereof.